Jackson, J.
This action is brought to recover a sum of money, said to be due from the defendant, as administrator of Hannah Ranger. The defendant relies for his defence upon the statute of 1788, c. 66, and the additional act of 1791, c. 28, by which, in order to relieve executors and administrators from the great loss and trouble to which they are exposed, “ by reason of demands brought against them after they have closed their accounts of administration, and after settlement of the estates they have administered is made among the heirs or devisees,” it is enacted, that “ No executor or administrator shall be held to answer to any suit that shall be commenced against him in that capacity, unless the same shall be commenced within the term of four years from the time of his accepting that trust.”
This action was commenced after the expiration of the four years so limited, in consequence of a certain resolve of the General Court. The case comes before us on a statement of facts made by the parties; and they have agreed that this question may be considered as if the defendant had pleaded the said statute of limitations in bar, and the plaintiff had set forth that resolve in his replication.
The cause of action, as stated in the case, accrued to the plaintiff on his payment of the money in question on the 6th of November, 1810. The judgment.upon which he paid it. was recovered against him in September, 1810. The defendant had accepted the trust of administrator on the 2d of December, 1806; and the four years limited by law expired on the 2d of December, 1810, about four weeks after the present cause of action accrued. In August, 1811, the defendant made a settlement in the Probate Court of his administration account, and, pursuant to a decree of that court, paid over the whole balance in his hands to the guardian of [ *401 ] the only child of the said intestate, who was her * next of kin. We say, he paid over that balance, because the same person being both administrator and guardian, there was no mode of making such payment but by passing the amount to his credit as administrator, and to his debit as guardian; which appears to have been done by the said decree of the Probate Court. If, therefore, the money in question can be recovered in this action, it must be paid by the defendant out of his own pocket; he having paid over and accounted for all the funds which were in his hands as administrator of the said Hannah Ranger.
*363 The plaintiff’s right of action being thus barred, he presented a petition to the General Court, praying that the operation of the statutes of limitation in this respect might be suspended; upon which a resolve was passed, authorizing and empowering him to commence and prosecute against the executor or administrator, or against the heirs or devisees of the said H. Ranger, all such actions, suits, or claims, as he might have against her estate, “ in the same way and manner as he might or could have done if the same had been commenced within the time prescribed by law.” The resolve further provides that the court in which such suits may be depending “ may proceed to hear and determine the same, and render the same judgment therein as the court might or could have done if the action had been commenced within the time prescribed by law, any thing in any act or law of this commonwealth to the contrary notwithstanding.” It is then further resolved, that “ The operation of the several statutes of limitation of this commonwealth, so far as they may come within the purview of this resolve, be, and they hereby are, suspended, and the same shall not operate as a bar to the several actions, suits, and claims, above mentioned.” There is a proviso that such action shall be commenced within one year from the passing of the resolve. This resolve was approved by the governor on the 15th of February, 1813; and the present action was brought within one year from that time.
*If the plaintiff appeared to have any just claims [ *402 ] against the defendant, it was undoubtedly regular and necessary to send him to the courts of law for the recovery of such claims, as appears to have been done in the first part of the resolve before recited. There is no other mode in which, by our consti tution and laws, he could effectually enforce his claims, and no other tribunal competent to afford him redress.
It is equally clear that the court in which the action may be pending must determine it according to law. If any other rule should be adopted in deciding the cause, one party or the other would be deprived of that protection which is guarantied by our constitution to every citizen, “ in the enjoyment of his life, liberty, and property, according to standing laws.” We cannot, therefore, presume that the legislature expected or intended that any court, in which this action might be pending, should, contrary to their duty and oaths of office, decide in any manner not warranted by standing law's.
Neither can it be presumed that the legislature intended, on this occasion, to prescribe to the courts of justice the judgment which the laws of the land would require them to render on the facts disclosed in this case. This might as well be done with respect to any *364 suit already pending as to a suit about to be commenced, and in either case would be an exercise of judicial power by the legislative department of government in violation of the express provisions of the constitution.
The resolve was certainly not intended to operate in either of these modes. It resembles much more an act for repealing or suspending the standing laws, which provide for the limitation of such actions. It is not uncommon, although it seems to be unnecessary, when a law is made, contrary to those previously existing, to add, that the new regulation shall be complied with, “ any thing in any former act or law to the contrary notwithstanding.” From the whole tenor of the resolve, as well as from the expressions quoted, it seems apparent that the legislature considered the [ * 403 ] laws in * question repealed or suspended by that resolve ; so that the courts might justly proceed to render such judgment as they would have done if those laws had never been enacted.
The question, then, occurs, whether the statute of 1791, c. 28, on which the defendant relies for his defence, is repealed or suspended by this resolve. The words used by the legislature are certainly very comprehensive; but, taking the whole resolve together, its operation is limited expressly to the actions, suits, and claims, which Holden may have against the estate of H. Ranger; and it would be doing violence to the language, and to the manifest intent of the legislature, to extend the operation of the resolve to any other case.
The statute, then, was not repealed or suspended. The said term of four years was still going on with respect to every executor and administrator in the commonwealth, who was not already discharged from his liability by force of that statute; and every executor and administrator, with respect to whom this period had already elapsed, was entitled to plead the limitation to any action which should be brought against him, as effectually after the passing of that resolve as he could have done before it was passed.
It therefore appears that, by the laws in force at the time when this action was brought, no executor or administrator was held to answer to any suit commenced against him under the circumstances under which this action was commenced. The question returns, if there be any question, whether this Court has power, by virtue of the said resolve, to hold the defendant liable to this suit, notwithstanding the laws to the contrary, which then existed in full force. This question has been already answered, unless it be contended that the General Court may repeal or suspend the law with respect to any one citizen, or any one particular suit, leaving it in full force as to all others.
*365 ‘By the twentieth article of the declaration of rights in the constitution of this commonwealth it is declared that * the power of suspending the laws, or the execution of [ * 404 ] the laws, ought never to be exercised but by the legislature, or by authority derived from it, to be exercised in such particular cases only as the legislature shall expressly provide for. Many of the articles in that declaration of rights were adopted from the Magna Charta of England, and from the bill of rights passed in the reign of William and Mary. (1) The bill of rights contains an enumeration of the oppressive acts of James 2, tending to subvert and extirpate the Protestant religion, and the laws and liberties of the kingdom ; and the first of them is the assuming and exercising a power of dispensing with and suspending the laws, and the execution of the laws, without consent of Parliament. The first article in the claim or declaration of rights contained in the statute is, that the exercise of sucli power, by regal authority, without consent of Parliament, is illegal. In the tenth section of the same statute it is further declared and enacted, that “ No dispensation by non obstante of or to any statute, or any part thereof, should be allowed; but the same should be held void and of no effect, except a dispensation be allowed of in such statute.” There is an implied reservation of authority in the Parliament to exercise the power here mentioned; because, according to the theory of the English constitution, “ that absolute despotic power,, which must in all governments reside somewhere,” is intrusted to the Parliament. (2)
The principles of our government are widely different in this par ticular. Here the sovereign and absolute power resides in the people ; and the legislature can only exercise what is delegated to them according to the constitution. It is obvious that the exercise of the power in question would be equally oppressive to the subject, and subversive of his right to protection, “ according to standing laws,” whether exercised by one man or by .a number of men. It cannot be supposed that the people, when adopting this general principle from the English bill of rights, and inserting it in our * constitution, intended to bestow, by implication, [ * 405 J on the General Court one of the most odious and oppressive prerogatives of the ancient kings of England. It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages which are denied to all others under like circumstances ; or that any one should be *366 subjected to losses, damages, suits, or actions, from which all others, under like circumstances, are exempted. (a)
There is no doubt that the legislature may suspend a law, or the execution or operation of a law, whenever they shall think it expedient. But in such case, the law thus suspended will have no effect or operation whatever during the time for which it is so suspended. This was done with respect to the statute of 1786, c. 52, for the limitation of personal actions. That act was to have taken effect, as to certain actions, on the 1st of June, 1791 ; but by several successive statutes, its operation was suspended until the 1st of December, 1793. So the privilege and benefit of the writ of habeas ear pus may be suspended by the legislature, under the circumstances mentioned in the constitution. But it was never supposed that it could be suspended as to certain individuals by name, and left to be enjoyed by all the other citizens.
It would not be an exercise of greater power to enact that Mr. James, the defendant in this suit, should not be held to answer to any suit commenced against him as administrator, after the expiration of two years from the time of his accepting that trust, than it would be to enact that he should be held to answer to any such suit commenced at any time within six years. It could not, in either case, be properly considered a suspending of the law, which limits such actions to four years; but it would be enacting a new and different rule for the government of one particular case. In other words,, it would be to ordain that the law, which regu- [ * 406 ] lotes all other suits against administrators, may * be wholly disregarded by the parties in this suit, and shall have no effect in the decision of the controversy between them.
Upon the whole, the Court is of opinion that the statute of 1791, c. 28, was not repealed nor suspended by the resolve before mentioned ; and that the plaintiff’s right of action being barred by that statute, and the defendant thereby discharged, we' cannot prevent the defendant from availing himself of this ground of defence to the present suit; and when a legal defence is thus presented to us, we are not at liberty to disregard it, and to give a judgment against the defendant.
Plaintiff nonsuit.
*367 Regula Generalis.
Of admission of attorneys and counsellors.
Ordered, that, when any person shall have been recommended to this Court, for admission to practice as a counsellor or attorney, agreeably to the provision of the rules of this Court, and it shall appear to the Court that such person is unable to attend, on account of sickness or other sufficient cause, he may, on producing a recommendation of the bar of the county where he dwells, to this Court in any other county, at the discretion of the Court, be admitted to practice ; any thing in the said rules to the contrary not withstanding.
367

 Stat. 1 W. and M. St. 2, c. 2.

 1 Black. Comm. 160.

 Piquet, Appt. 5 Pick.—See, also, Commonwealth vs. Worcester, 3 Pick. 462 — Wales vs. Belcher, 3 Pick. 508.— Walter vs. Bacon, 8 Mass. Rep. 468. — Locke vs. Dane Sf Al, 9 Mass. Rep. 360. — Patterson vs. Filbrook, 9 Mass. Rep. 151.