## NORFOLK COUNTY.

### WEYMOUTH AND BRAINTREE FIRE DISTRICT *vs.* COUNTY COMMISSIONERS OF NORFOLK.

The St. of 1868, *c.* 346, providing for the dissolution of fire districts formed of portions of more than one town, and for the division of their property, was constitutional.

A petition to county commissioners, under the St. of 1868, *c.* 346, § 5, to divide the property and debt of a fire district, by a portion of the district which has voted to withdraw therefrom, need not be made within ten days after the vote; is not invalidated by the fact that it is signed by only a majority of a committee appointed to carry the vote into effect, nor by the fact that it is also signed by persons not on the committee; and is not barred by the filing of a bill in equity by the petitioners to restrain the district from assessing a tax.

A portion of a fire district, which has voted to withdraw therefrom under the St. of 1868, *c.* 346, § 5, before the passage of the St. of 1869, *c.* 417, is not prevented by the latter statute from applying to the county commissioners to divide the property and debt of the district.

On the petition of one of the portions of a fire district composed of portions of two towns, which has voted to withdraw therefrom, the.county commissioners have power, under the St. of 1868, *c.* 346, § 5, to award a part of the property of the district to the one portion and the rest to the other; and where it is impossible to divide the property in due proportions, to award that the portion receiving the most shall pay a sum of money to the other.

PETITION for a writ of *certiorari* to be directed to the county commissioners of Norfolk, ordering them to return into this court the record of their proceedings in apportioning the debt and dividing the property of the petitioners. The following case was reserved by *Morton*, J., on the pleadings and agreed facts, for the decision of the full court:

The petitioners were incorporated by the St. of 1846, *c.* 118, as a fire district in Weymouth and Braintree, composed of portions of those towns. On January 25, 1869, the inhabitants of the district residing in Braintree, being legal voters in the district, at a meeting duly called under the St. of 1868, *c.* 346,* voted

---

* " SECTION 1. Fire districts, formed of portions of more than one town, may be dissolved in the manner hereinafter provided.

" SECTION 2. Seven or more voters in any such district may, at any time, file with the clerk of such district an application in writing, requesting him to call a meeting of such district; and he shall immediately thereupon cause such

to withdraw from the district, and appointed seven persons a committee to carry the vote into effect. The other inhabitants of the district not agreeing to any division of its property, a petition was presented to the county commissioners on January 12, 1871, at an adjournment of their December term 1870, signed by six of the committee and by four other persons, praying the commissioners to hear the parties, apportion the debt and divide the property

---

meeting to be called in the manner prescribed by the thirty-ninth section of the twenty-fourth chapter of the General Statutes; and he shall further set forth, in the notification of such meeting, that the same is called to consider the expediency of dissolving the district. Such meeting shall be organized by the choice of a moderator and clerk.

"SECTION 3. If a majority of the votes at said meeting shall be in favor of a dissolution of such district, then the property and assets, as well as the debts and liabilities of such district, shall be equitably divided and apportioned between the parts of said district composed of inhabitants of the several towns, in such manner as a committee of seven voters in said district, to be elected by ballot at such meeting, shall agree upon: provided, the plan adopted by said committee shall be ratified by said district at a meeting called to consider their report.

"SECTION 4. In case the committee shall be unable to agree upon such division, or their plan fail to be ratified by the district, they shall, within ten days after such inability or failure, notify the county commissioners of the county in which any one of the towns in part composing the fire district is situated, of such disagreement or refusal to ratify, and said commissioners shall forthwith give notice of a time and place to hear and decide the matter in dispute. And said commissioners shall, at said time and place, after hearing such parties as may desire to be heard, make an award in writing upon the whole matter submitted to them.

"SECTION 5. In case the portion of any fire district composed of parts of several towns, which is comprised in any one town, desires to withdraw from said district, and shall so decide at a meeting of the inhabitants of such town, being legal voters in such district, to be called and warned in the manner provided in the second section of this act, then it shall be lawful for such territorial portion of the district, so voting, to withdraw from such district; and they shall be entitled to receive such share of the property of said district, and shall be liable to such portion of the total indebtedness of the same, as may be agreed upon between the part of said district so withdrawing and the remainder of the district; and in case no such agreement can be made, then said matters in dispute shall be considered and decided by the county commissioners, in the manner provided in the fourth section of this act."

of the district. On January 19, 1870, the same six members of the committee, and two other persons, filed a bill in equity to restrain the district from assessing a tax upon the inhabitants; but no hearing was ever had on the bill. The commissioners heard the parties, and on January 31, 1871, awarded that it was impossible to divide the property so that each part of the district should receive its just proportion, without the payment of money; that an engine-house, and one engine, with all its tackle and equipments, should belong to the Braintree portion of the district; that the remaining property should belong to the Weymouth portion of the district, and that the Braintree portion should pay the Weymouth portion the sum of $866.

*W. A. Field & E. C. Bumpus*, for the petitioners.

*E. Avery & G. M. Hobbs*, for the respondents.

CHAPMAN, C. J. The petitioners were incorporated as a fire district, in Weymouth and Braintree, by the St. of 1846, *c.* 118, and were duly organized and have for many years acted as such fire district. The St. of 1868, *c.* 346, provides that fire districts formed of portions of more than one town may be dissolved in the manner therein stated. The petitioners contend that the latter act, if applicable to them, is unconstitutional, inoperative and void. But under the act first mentioned, the district became a municipal corporation, with limited powers, for a special purpose. There can be no doubt that the power to create, change and destroy municipal corporations is in the legislature. This power has been so long and so frequently exercised upon counties, towns and school districts, in dividing them, altering their boundary lines, increasing and diminishing their powers, and in abolishing some of them, that no authorities need be cited on this point. The Constitution does not establish these corporations, but vests in the legislature a general jurisdiction over the subject by its grant of power to make wholesome laws as it shall judge to be for the general good and welfare of the Commonwealth. These are not like private corporations, having chartered rights which are in the nature of contracts and cannot be altered without the consent of the grantees unless a right to do so is reserved. But the legislature may amend their charters,

enlarge or diminish their powers, extend or limit their boundaries, consolidate two or more into one, and abolish them altogether, at its own discretion. Cooley on Constitutional Limitations, 192.

On January 25, 1869, the inhabitants of that portion of the district residing in Braintree voted to withdraw from the district under the provisions of the fifth section of the St. of 1868, and presented a petition to the county commissioners on January 12, 1871, being an adjournment of their December term, for a hearing of the parties, an apportionment of their debt, and a division of their property. It is contended that this petition was filed too late, and could not be valid unless filed within ten days after the vote to withdraw, which vote was passed January 25, 1869. The petitioners contend that the limitation of ten days, in the fourth section of the act, applies to this proceeding. But the language of the fourth section will not bear such an interpretation. It relates to another matter. The fifth section fails to prescribe any time of limitation; and it does not appear that there was any unreasonable delay in the proceedings before the county commissioners.

The petitioners further contend that the petition to the county commissioners is not signed by the committee which was appointed at the meeting held January 25, 1869. But it appears to be signed by a majority of that committee, and the acts of a majority of such committee are valid. *Sprague* v. *Bailey*, 19 Pick. 436. *Williams* v. *School District in Lunenburg*, 21 Pick. 75. There are other signatures to the petition, but they do not vitiate it.

The petitioners further contend that the St. of 1869, *c.* 417,* which repeals the St. of 1868, *c.* 346, terminated the right of the

---

* " Chapter three hundred and forty-six of the acts of the year eighteen hundred and sixty-eight, entitled an act to provide for the dissolution or dismemberment of fire districts in certain cases, is hereby repealed; provided, however, that such repeal shall not affect any proceedings already commenced under said act, nor shall any portion of a fire district, which has already voted to withdraw from such district, be deprived thereby of any rights or remedies to which they would have been otherwise entitled under said act."

respondents to apply to the county commissioners. On the contrary, we think it expressly reserves their rights; they having already voted to withdraw, and not having abandoned their rights by laches or otherwise.

The petitioners further contend that the bill in equity, which is alleged to have been pending, was a bar to the proceedings before the county commissioners. But the proceedings before the commissioners were of a very different character from the suit in equity. The object of the bill was to procure an injunction against the assessment of taxes; the object of the proceeding before the county commissioners was to procure the exercise of certain powers which the statute conferred on the commissioners as to the division of the common property and the apportionment of the debt.

The petitioners contend that the inhabitants of the Braintree portion of the district cannot organize a fire district, nor divide the property *pro rata* among themselves, nor otherwise properly use the property decreed to them by the county commissioners. This position mistakes the purport of the fifth section of the St. of 1868, *c.* 346. The withdrawing portion acts in a corporate capacity, and the provisions of the statute cannot be carried out without regarding that portion as a corporation. The voters and committee act as members of it; the county commissioners must treat it as such; its portion of the property must be held in that capacity, and its portion of the indebtedness must be assessed and paid as such. Thus construed, the provisions of the statute are simple and intelligible; but they would not be so otherwise.

The award is objected to as bad. But the powers of the county commissioners in making it are very broad. If they make a division which is in substance equitable, they comply with the statute. The property to be divided was of such a character that it could not be divided equally. In such a case equity requires that equality shall be attained by the payment of money. Their property consisted of personal estate. But even in the partition of real estate, equality may be attained by the payment of money. Gen. Sts. *c.* 136, § 56. There is no right of trial by jury in making such a partition. And the Braintree portion of the dis-

trict, which is to pay the money, is not the complaining party. We think the proceedings have been legal, and the

*Petition must be dismissed.*