HAZEL PADDOCK *vs.* TOWN OF BROOKLINE.

Norfolk.      November 8, 1963. — March 19, 1964.

Present: SPALDING, WHITTEMORE, CUTTER, KIRK, & REARDON, JJ.

*Constitutional Law,* Equal protection of laws, Legislation favoring individual, Who may question constitutionality, Political subdivisions, Public purpose. *Way,* Public: defect. *Notice. Municipal Corporations,* Control by Legislature. *Pleading, Civil,* Demurrer. *Practice, Civil,* Appeal.

On an appeal in an action from an order sustaining a demurrer grounded on failure of the declaration to state a cause of action, where the plaintiff did not seek to amend the declaration, this court, upon deciding that the demurrer was properly sustained, affirmed the order and directed the entry of judgment for the defendant.   [231, 240]

St. 1960, c. 519, purporting to enable a named person to maintain an action against a certain town under G. L. c. 84, § 15, for injuries received in a fall on a sidewalk notwithstanding that that person had failed to give the notice required by § 18 and constituting an essential element of a cause of action under § 15, was not enacted for the public good and was therefore beyond the scope of legislative control of a municipality under art. 2 of the Amendments of the Massachusetts Constitution, and was violative of art. 10 of the Declaration of Rights as imposing on the designated town, in favor of one person only, a potential liability not existing in like circumstances under the "standing laws"; and in an action by such person against the town based on § 15 and the 1960 statute it was open to the town to raise. the unconstitutionality of the 1960 statute in defending on the ground of want of notice, and the town was entitled to judgment on that ground.   [231–232, 236–237, 239–240]

TORT.   Writ in the Superior Court dated October 7, 1960.

The action was heard by *Ford,* J., on demurrer.

*Herbert Hershfang* for the plaintiff.

*Albert R. Mezoff* (*Phillip Cowin,* Town Counsel, with him) for the defendant.

Paddock *v.* Brookline.

KIRK, J.   The case comes to us on the plaintiff's appeal from an order of the judge sustaining the defendant's demurrer to the declaration.   G. L. c. 231, § 96.   One of the grounds of demurrer is that the declaration fails to state a cause of action.   G. L. c. 231, § 18, Second.   *Weiner* v. *Lowenstein*, 314 Mass. 642, 646.   The plaintiff did not seek to amend.   She thus stakes the result of her action upon the adequacy of her case as set out in the declaration.   *Keljikian* v. *Star Brewing Co.* 303 Mass. 53, 61.   We examine the declaration to test its sufficiency.

The declaration alleges that on December 23, 1958, the plaintiff sustained injuries as a result of a fall on a defective sidewalk in the town of Brookline (the town) which had failed to perform its duty to keep the sidewalk in a reasonably safe condition; and that, although she had failed to give notice in accordance with G. L. c. 84, § 18,[1] and § 19,[2] she was authorized to bring this action under the provisions of St. 1960, c. 519.

We turn to St. 1960, c. 519.   That act, approved July 5, 1960, reads: "Hazel Paddock of Brookline may maintain a suit against the town of Brookline under the provisions of section fifteen of chapter eighty-four of the General Laws for an injury which she received from a fall on a sidewalk at 73 Monmouth street in said town on or about December twenty-third, nineteen hundred and fifty-eight, notwithstanding the fact that she failed to give the notice required by sections eighteen and nineteen of chapter eighty-four of the General Laws."

On demurrer the plaintiff is bound by her averment that the notice required by G. L. c. 84, §§ 18 and 19, was not given.   Not only is the giving of the statutory notice a condition precedent to the bringing of an action, it is also an

---

[1] "A person so injured shall . . . within thirty days thereafter, give to the . . . town . . . by law obliged to keep said way in repair, notice of the name and place of residence of the person injured, and the time, place and cause of said injury or damage . . . ."

[2] "Such notice shall be in writing, signed by the person injured or by some one in his behalf, and may be given . . . to one of the selectmen or to the town clerk or treasurer. . . ."

essential ingredient indispensable to the existence of the cause of action. *Miller* v. *Rosenthal,* 258 Mass. 368, 369, and cases cited. *Souza* v. *Torphy,* 336 Mass. 584, 585–586. See *Brocklesby* v. *Newton,* 294 Mass. 41, 42, and *George* v. *Worcester,* 326 Mass. 446, 448. "The notice must not only be given, but that it was given must be pleaded." *Berlandi* v. *Union Freight R.R.* 301 Mass. 47, 51, and cases cited. The demurrer was therefore properly sustained unless St. 1960, c. 519, saves the declaration.

It is plain that the purpose and effect of St. 1960, c. 519, is to suspend the provisions of G. L. c. 84, §§ 18 and 19, as they relate to the plaintiff in connection with her alleged injury, or, otherwise stated, to exempt the particular case from the application of the general statute.

The parties agree that the sole issue in the case is whether St. 1960, c. 519, is constitutional. The issue has two aspects: (1) whether the General Court can constitutionally create a cause of action for the benefit of a named individual by suspending the operation of a provision of the general laws, thereby dispensing with an essential element of a cause of action, and leaving the general law in full force as to all other persons similarly situated; and (2) whether a municipality has standing to raise the issue of the constitutionality of such special and preferential legislation in view of the extensive control the General Court has over cities and towns. We treat each aspect separately.

The town asserts that St. 1960, c. 519, violates certain provisions of the Constitution of Massachusetts. It does not contend that it also violates the Constitution of the United States. We accordingly consider only the alleged violation of the Constitution of Massachusetts (the Constitution). We proceed with caution, however, granting every presumption and resolving all doubts in favor of the validity of the act. In the execution of our duty to uphold the provisions of the Constitution, we are nevertheless bound to declare this act unconstitutional if the General Court has clearly transcended its powers in enacting it. *Davison* v. *Johonnot,* 7 Met. 388, 392.

The Constitution confers upon the General Court full authority "to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances . . .; *so as the same be not repugnant or contrary to this constitution,* as they shall judge to be for the good and welfare of this commonwealth, and for the government and ordering thereof, and of the subjects of the same . . ." (emphasis supplied). Part II, c. 1, § 1, art. 4, of the Constitution of Massachusetts.

From the beginning, this court has given effect to the broad sweep of power which the Constitution delegates to the General Court, and, although it has often upheld special legislation, it has indicated emphatically that the power so to legislate is not unlimited.

The first case, so far as we are aware, where the court considered an issue similar to the one here presented was *Holden* v. *James,* 11 Mass. 396. There, the plaintiff's right of action against an administrator was barred by a four year statute of limitations. The General Court passed a resolve empowering the plaintiff to commence and prosecute his action "in the same way and manner as he might or could have done, if the same had been commenced within the time prescribed by law; . . . any thing in any act or law of this commonwealth to the contrary notwithstanding" (399). It was further resolved that the statutes of limitations, so far as they might come within the purview of the resolve, were suspended and should not operate as a bar to the plaintiff's action. The court held that the resolve was not an undertaking by the Legislature to exercise judicial power "in violation of the express provisions of the constitution" (402) (art. 30 of the Declaration of Rights), nor did it construe the resolve as an exercise of the Legislature's power to suspend the laws under art. 20 of the Declaration of Rights. It treated the resolve as "enacting a new and different rule for the government of one particular case. In other words, it would be to ordain that the law, which regulates all other suits against administrators, may be wholly disregarded by the parties in this suit, and shall have no effect in the decision of the controversy between them"

(405–406).   The court struck down the resolve and ordered a nonsuit against the plaintiff.   In passing upon the constitutional question the court referred to the citizen's "right to protection, 'according to standing laws,'"[3] and continued:  "It is manifestly contrary to the first principles of civil liberty and natural justice, and to the spirit of our constitution and laws, that any one citizen should enjoy privileges and advantages, which are denied to all others under like circumstances: or that any one should be subjected to losses, damages, suits or actions, from which all others under like circumstances are exempted.   There is no doubt that the legislature may suspend a law, or the execution or operation of a law, whenever they shall think it expedient. . . .   But it was never supposed that it [the writ of habeas corpus, for example] could be suspended as to certain individuals by name, and left to be enjoyed by all the other citizens."   *Holden* v. *James,* 11 Mass. 396, 404–405.   See *Simonds* v. *Simonds,* 103 Mass. 572, 573.   The soundness of this salutary principle has never been questioned by this court.

There are, however, instances of special legislation favoring individuals which has been declared valid.   These merit discussion.   In *Rice* v. *Parkman,* 16 Mass. 326, for example, a legislative resolve authorizing the sale of specified realty owned by certain minors, the proceeds to be applied in their interests, was held valid.   The court said that, although the power to authorize such sales had been delegated by the Legislature to the courts, this authority, being merely ministerial, was not judicial in its character, and could as well have been delegated to selectmen of towns or clerks of counties.   It was also said that the Legislature, in passing the resolve, was exercising its parental power "as the general guardian and protector of those who are disabled to act for themselves"; that the only object of the legislation was "for purposes beneficial to all who were interested

---

[3] The court had in mind, no doubt, art. 10 of the Declaration of Rights, which reads in relevant part:  "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws."

therein"; that there was no interference with the rights of others; and that "it was not a case of controversy between party and party." *Rice* v. *Parkman,* 16 Mass. 326, 328, 331.[4]   To the same effect and based upon the same premises was the holding in *Davison* v. *Johonnot,* 7 Met. 388, that the Legislature has power to authorize the guardian of a person adjudged non compos mentis to sell a part of his ward's real estate and apply the proceeds to discharge encumbrances on other parts thereof.

Of special interest is the case of *Picquet, appellant,* 5 Pick. 65, where the court considered a legislative resolve "empowering" the judge of probate, who had required the appellant (a French subject) to file a $50,000 administrator's bond on his father's estate in this Commonwealth, to grant letters of administration to the appellant upon his filing of a bond, with the usual conditions, executed by himself as principal and his only brother as surety; said bond to "be in lieu of every . . . bond . . . by any law . . . now in force required."   The court reversed the decree of the probate judge who had denied letters of administration.   It construed the resolve as *authorizing* the judge to take security other than provided by statute if, in his discretion, it was expedient to do so.   The court then held that under the law existing prior to the resolve the bond could be reduced, and "may legally and ought in discretion to be considerably reduced."   We quote from the opinion at pages 68–70 where the court, speaking through Chief Justice Parker, said, "The language of the resolve does not import a command or direction to . . . [the probate judge] to execute the will of the legislature in relation to a subject of judicial cognizance placed by the laws under his authority and jurisdiction.   It would be doing violence to the language and the intentions of the legislature, to suppose that it meant to dictate to a judicial tribunal the course of its

---

[4] In a footnote at page 331, the editor says that the soundness of the decision in *Holden* v. *James,* 11 Mass. 396, has been questioned.  This comment appears to be quite gratuitous.  The soundness of the decision in the *Holden* case has never been questioned by the court.  On the contrary, whenever cited in our reports, it has been cited with approval, the most recent case being *Gray* v. *Salem,* 271 Mass. 495, 498.

proceedings in a particular case.   We do not think the legislature would have passed a resolve *requiring* and *directing* the Judge of Probate to do what by this resolve they intended only to empower him to do.   The wise provision of the constitution, which restrains each department of the government within its appointed sphere, would have prevented a measure like that. . . .   We cannot view . . . [this resolve as suspending the operation of the statute], for it ought not to be presumed that the legislature intended to do what by the constitution they have no authority to do, and we think it very clear that they have no authority by the constitution to suspend any of the general laws, limiting the suspension to an individual person, and leaving the law still in force in regard to every one else.   This would not be suspending a law by virtue of their constitutional power so to do in cases of emergency, but it would be to dispense with the law in favour of an individual, leaving all other subjects of the government under obligation to obey it; and we do not find any such dispensing power in the constitution. . . .   The true principle by which courts of law are to be governed, on questions of this nature, . . . [is] most accurately and distinctly stated by Jackson, J., in the case of *Holden* v. *James.*''

We think that St. 1960, c. 519, which purports to exempt a named individual from the obligations of a general law while allowing the general law to remain in full force and effect as to all other persons, comes squarely within the principle of the *Holden* case.   There is here no exercise of the parental power of the Commonwealth as in *Rice* v. *Parkman,* 16 Mass. 326, and in *Davison* v. *Johonnot,* 7 Met. 388. Nor is there here any discretion in the court under existing laws to dispense with the requirements of notice in G. L. c. 84, §§ 18 and 19.   *Picquet, appellant,* 5 Pick. 65.   On the other hand, there is a ''controversy between party and party'' (see *Rice* v. *Parkman,* 16 Mass. 326, 328), and St. 1960, c. 519, does impose ''a new and different rule for the government of one particular case.''   *Holden* v. *James,* 11 Mass. 396, 405.   As was said in *Dickinson* v. *New England Power Co.* 257 Mass. 108, 111–112, ''by art. 10 of the Decla-

ration of Rights 'Each individual . . . has a right to be protected . . . in the enjoyment of his . . . property according to standing laws,' and it is settled that the Legislature has no power to suspend the operation of a general law in favor of an individual.[5]  *Holden* v. *James,* 11 Mass. 396.''  We hold that St. 1960, c. 519, is repugnant to the Constitution of the Commonwealth.[6]

We now consider whether a town has standing to challenge the constitutionality of a special act which creates a cause of action against the town by declaring that a particular individual is exempt from the requirement of giving the statutory notice.  In order to raise the constitutional issue one must be able to show that the operation of the statute does or will impair his rights.  *Mullholland* v. *State Racing Commn.* 295 Mass. 286, 292, and cases cited.  *Massachusetts Commn. Against Discrimination* v. *Colangelo,* 344 Mass. 387, 390–391.  Our inquiry is directed to the question whether the town has a right to have its property protected ''according to standing laws.''  Art. 10, Declaration of Rights.  If the town does have such a right, that right clearly will be impaired if the town is required to defend against and to respond in damages on account of an action which only the plaintiff, to the exclusion of all others similarly situated, is entitled to bring.

The Constitution of the Commonwealth invests in the General Court ''full power and authority to erect and con-

---

[5] We think it is unnecessary to consider whether St. 1960, c. 519, is repugnant to art. 7 or to art. 6 of the Declaration of Rights.  As to the latter, see, *Hewitt* v. *Charier,* 16 Pick. 353, 355; *Commonwealth* v. *Blackington,* 24 Pick. 352, 358–359; *Brown* v. *Russell,* 166 Mass. 14, 22–23; *Mayor of Lynn* v. *Commissioner of Civil Serv.* 269 Mass. 410, 411–413; *Opinion of the Justices,* 303 Mass. 631, 640–643.

[6] In her brief the plaintiff, in order to show a long and continued course of legislative action, cites over forty special acts and resolves passed for the sole benefit of particular persons.  These enactments fall into four general categories: (1) conferring of benefits upon public employees; (2) validating acts of notaries public; (3) directing payment to certain individuals to whom the Commonwealth owed a legal or moral obligation; and (4) *authorizing* cities or counties to make payments to certain persons.  The plaintiff, however, cites no special act suspending the operation of a general law in favor of a particular individual so as to create a cause of action against a town or against anyone else.

stitute municipal or city governments, in any corporate town or towns in this commonwealth, and to grant to the inhabitants thereof such powers, privileges, and immunities, not repugnant to the constitution as the general court shall deem necessary or expedient for the regulation and government thereof . . . ." Art. 2 of the Amendments. This broad grant of power is the basis for the settled doctrine that the towns of the Commonwealth possess no inherent right to self-government (*Commonwealth* v. *Plaisted,* 148 Mass. 375, 384–387), and for the proposition that "the power to create, change and destroy municipal corporations is in the legislature." *Weymouth & Braintree Fire Dist.* v. *County Commrs. of Norfolk,* 108 Mass. 142, 144. It has accordingly been held that the General Court may constitutionally enact legislation providing for the dissolution of fire districts (*Weymouth & Braintree Fire Dist.* v. *County Commrs. of Norfolk,* 108 Mass. 142); authorizing the Governor to appoint a police board for the city of Boston (*Commonwealth* v. *Plaisted,* 148 Mass. 375); ordering a city to pay to a Civil War veteran, who had been incapacitated in the public service, a pension on terms different from pensions granted to others (*Gray* v. *Salem,* 271 Mass. 495, 498); requiring a city to reinstate a former employee whose retirement had been invalidated due to an irregularity in the retirement proceedings (*Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492); and directing a town to indemnify firemen for damages sustained in the performance of their duties as firemen (*Berube* v. *Selectmen of Edgartown,* 336 Mass. 634, 638). It is to be observed, however, that, in the above cases where individuals were involved, the court was at pains to note that the special act had an apparent public purpose, being "for the good and welfare of this commonwealth," and therefore clearly within the authority of the General Court under Part II, c. 1, § 1, art. 4, of the Constitution of the Commonwealth. Thus, in the *Horrigan* case, there was "[r]ecognition of a *quasi* moral obligation" of the Commonwealth to prevent an injustice to a public employee (497–499); in the *Berube* case, recognition of "the obligation of the public to those employees who risk injury and

death in the performance of hazardous [public] duties
. . .'' (638); and in the *Gray* case, recognition that military
veterans in the public service are the ''object of legitimate
bounty from the Legislature'' (498–499). It is further to
be observed that none of the special acts purported to sus-
pend, in whole or in part, a general law so as to create a
cause of action in favor of a named individual against a
town.

We conclude, therefore, that there is a limitation on the
control which the General Court may exercise over munici-
palities under art. 2 of the Amendments, and that the limi-
tation is fixed in art. 4 of Part II, c. 1, § 1, of the Con-
stitution, by the words, ''for the good and welfare of this
commonwealth.'' This is not a new concept. In *Wey-
mouth & Braintree Fire Dist.* v. *County Commrs. of Nor-
folk,* 108 Mass. 142, 144, Chief Justice Chapman said, ''The
Constitution does not establish these [municipal] corpora-
tions, but vests in the legislature a general jurisdiction over
the subject by its grant of power to make wholesome laws
as it shall judge to be *for the general good and welfare of
the Commonwealth''* (emphasis supplied). Again, in *Pro-
prietors of Mount Hope Cemetery* v. *Boston,* 158 Mass. 509,
it was said at page 520: ''The control which the Legislature
may exercise [over municipal property] is limited; it must
act by public agencies and for public uses exclusively.''
That is the test which the court has applied in the cases dis-
cussed above. It is the test which we apply here. We per-
ceive no advantage to the public by the exclusive and pref-
erential treatment which St. 1960, c. 519, extends to the
plaintiff, a private citizen. There is, on the contrary, a dis-
tinct public disadvantage since the funds to defend against
and to pay the preferred claim of the plaintiff, a private
citizen, can come only from other private citizens, the tax-
payers of the municipality. The legislative power over a
municipality is exceeded where no public good is derived
from its exercise — ''where the only public advantage is
such as may be incident and collateral to the relief of a pri-
vate citizen.'' See *Gray* v. *Salem,* 271 Mass. 495, 498.

We conclude that there is no basis for a legislative determination that the public good will be served by relieving this plaintiff from the general statutory requirement of giving notice. Accordingly, St. 1960, c. 519, was beyond the constitutional power of the Legislature and must be disregarded. The town had the right to defend the case on the ground of absence of notice. The admitted failure of the plaintiff to give the required notice entitles the town to judgment in its favor.

The plaintiff relies heavily upon *Sanger* v. *Bridgeport*, 124 Conn. 183, where a special act similar to St. 1960, c. 519, was upheld. There are some points of distinction between the *Sanger* case and the one under consideration which we briefly note. In the *Sanger* case, the plaintiff had seasonably given notice to the defendant, but the notice was defective in form; the Connecticut Legislature merely purported to cure the formal defect[7] which the general law declared would not invalidate the notice.[8] In the case before us, no notice whatever was given, and St. 1960, c. 519, purported to exempt the plaintiff from the substantive requirement of the general laws. In any event, to the extent that the *Sanger* case is at variance with the result reached here, we decline to follow it.

The order sustaining the demurrer is affirmed, and judgment is to be entered for the defendant. G. L. c. 231, § 125.

*So ordered.*

---

[7] Compare *Danforth* v. *Groton Water Co.* 178 Mass. 472, 477–478, where this court, through Holmes, C.J., upheld a special act, of general application, which was enacted to save the parties, who, "having a case in court shall not be turned out for neglect of what under the circumstances was a naked and useless form." Cf. also *Dunbar* v. *Boston & Providence R.R.* 181 Mass. 383, 386.

[8] "No notice given under the provisions of this section shall be held invalid or insufficient by reason of an inaccuracy in describing the injury, or in stating the time, place or cause of its occurrence if it shall appear that there was no intention to mislead or that such town, city, corporation or borough was not in fact mislead thereby." Conn. Gen. Sts. (1930) § 1420. See G. L. c. 84, § 18, for a similar provision. It should be noted however, that Connecticut, unlike Massachusetts, has no counter notice provision in its statutes requiring the town to notify the injured party or his representative in the event that the original notice is insufficient. See G. L. c. 84, § 20. Special legislation is the only means in Connecticut to avoid depriving the injured party of his cause of action because of certain formal defects in his seasonably given notice.