CITY OF CAMBRIDGE *vs.* COMMISSIONER OF PUBLIC WELFARE.

Suffolk.  December 4, 1969. — April 3, 1970.

Present: SPALDING, CUTTER, KIRK, SPIEGEL, & QUIRICO, JJ.

*Constitutional Law*, Municipal property, Due process of law, Public wel-
fare, Public purpose, Political subdivisions.  *Municipal Corporations*,
Property, Control by Legislature.  *Public Welfare*.  *Old Age Assis-
tance*.  *Lien*, For old age assistance.

Statement as to the nature of municipalities, their relation to the Com-
monwealth, and the power of the Legislature to deal with their prop-
erty.  [185–187]

Liens on real estate acquired by a municipality for old age assistance
under G. L. c. 118A prior to the effective date of St. 1967, c. 658, on
which no judicial enforcement proceedings had been started before
that date, were held by the municipality in its governmental capacity
in the course of performing the governmental function of administering
the old age assistance program, were subject to legislative control for a
public purpose, and were constitutionally abolished by statute without
compensation to the municipality to facilitate the public purpose of
transferring the administration of the old age assistance and other
welfare programs from the municipalities to the Commonwealth.
[188–189]

BILL IN EQUITY filed in the Superior Court on Decem-
ber 10, 1968.

The suit was reported by *Collins*, J.

*Philip M. Cronin*, City Solicitor, for the plaintiff.

*Walter H. Mayo, III*, Assistant Attorney General, for the
defendant.

*A. Van C. Lanckton*, for Massachusetts Welfare Rights
Organization & others, submitted a brief.

QUIRICO, J.  This is a bill in equity brought by the city
of Cambridge (city) against the Commissioner of Public
Welfare of the Commonwealth of Massachusetts (commis-
sioner) under G. L. c. 231A, for a declaratory decree con-
cerning certain liens which the city had acquired under the
old age assistance law, G. L. c. 118A, prior to the compre-

hensive amendment thereof by St. 1967, c. 658, effective July 1, 1968. The case was heard on a statement of agreed facts, and is before us on a reservation and report, without decision, by a judge of the Superior Court.

The agreement of the parties includes facts on certain issues which have been eliminated by subsequent legislative action as will appear below. We state the facts as to the remaining issues. The city, acting under G. L. c. 118A, § 4, as it stood prior to July 1, 1968, took liens on a number of parcels of real estate, or on interests therein, owned by recipients of old age assistance, and recorded them in the registry of deeds. On July 1, 1968, the city held a number of such liens on which no judicial proceedings for enforcement had been started.[1] The commissioner has released a number of such liens, "upon request of interested persons and for the purpose of clearing record titles of such liens." He has not asked the city to transfer any such liens to the Commonwealth, and has not offered to pay the city any consideration for them.

During the fiscal years ending June 30, 1967, and June 30, 1968, the sums of $953,256.82 and $1,271,346.98 were recovered, respectively, on liens of this type throughout the Commonwealth. These sums were distributed as follows: 12% to cities and towns, 60% to the Federal government, and 28% to the Commonwealth.

While this case was before the Superior Court and when the parties filed their briefs in this court, a substantial issue in the case was whether the comprehensive changes made in our welfare system and statutes by St. 1967, c. 658, effective July 1, 1968, impliedly discharged or terminated the old age assistance liens, so called, which were then held by municipalities and on which no judicial enforcement proceedings had been started. A related question

---

[1] See St. 1967, c. 658, reorganizing the Department of Public Welfare, transferring administration of the public welfare system from municipalities to the Commonwealth, and providing in § 80 thereof that "all prosecutions and legal and other proceedings duly begun by . . . any city or town board or office abolished by this act . . . shall continue unabated and remain in full force and effect notwithstanding passage of this act, and may be completed . . . by the department of public welfare."

was who was authorized to discharge or release such a lien, assuming that it was still in effect. These two questions have been effectively eliminated from this case by St. 1969, c. 885, § 28, approved August 29, 1969, which provides that "[a]ll liens given by recipients to the cities and towns under any assistance program administered by the department of public welfare prior to the enactment of chapter six hundred and fifty-eight of the acts of nineteen hundred and sixty-seven[2] are hereby abolished. A release of such liens shall be given by the treasurer of such city or town." No present purpose would be served by trying to decide whether the abolition of such liens resulted solely from this quoted statute, or whether they had been impliedly abolished by the comprehensive amendments of St. 1967, c. 658.

Thus the sole issue remaining is whether the Massachusetts Constitution permits the Legislature to abolish these old age assistance liens without requiring the Commonwealth to compensate the municipalities for their loss of the liens. In deciding this issue it may be helpful to restate the basic nature of our municipalities, their relationship to the Commonwealth, and the power and authority of the Legislature to deal with the property of the municipalities. The following language taken substantially from *Higginson* v. *Treasurer & Sch. House Commrs. of Boston*, 212 Mass. 583, 584–585, serves as such a restatement:

1. Cities and towns are territorial subdivisions of the Commonwealth created as public corporations for convenience in the administration of government. Historically they have exercised the powers which have been conferred upon them by express enactment of the Legislature or by necessary implication from undoubted prerogatives vested in them.[3]

---

[2] This is the statute which reorganized the Department of Public Welfare and transferred the administration of the public welfare system from municipalities to the Commonwealth. See footnote 1.

[3] For the purposes of this decision it is unnecessary to consider whether these basic principles have been affected by the material changes made in art. 2 of the Amendments of the Massachusetts Constitution by art. 89 of the Amendments, commonly referred to as the "Home Rule Amendment," ratified on November 8, 1966.

2. Municipalities have a twofold character, the one governmental and the other private or proprietary. In the one they execute some of the functions and possess some of the attributes of sovereignty which have been delegated to them by the Legislature; and in the other they are clothed with some of the capacities of private corporations and may claim some of their rights and immunities, and are subject to some of their liabilities.

3. Property which a municipality has acquired and owns as an agency of the State, and which it holds solely for public uses, is subject to legislative control. It may be transferred to some other agency of government charged with the same duties, or it may be taken from the municipality by the Commonwealth and devoted to other public uses and purposes, without payment of compensation therefor. *Worcester* v. *Commonwealth*, 345 Mass. 99, 100. *Massachusetts Turnpike Authy.* v. *Commonwealth*, 347 Mass. 524, 526–529. Yet, the legislative power to take or transfer this type of property from a municipality is not unlimited. It may be exercised only for the accomplishment of some public purpose encompassed by Part II, c. 1, § 1, art. 4, of the Constitution.[4] *Paddock* v. *Brookline*, 347 Mass. 230, 238–239. See *Horrigan* v. *Mayor of Pittsfield*, 298 Mass. 492, 497–500; *Berube* v. *Selectmen of Edgartown*, 336 Mass. 634, 638.

4. Property which a municipality holds in its private or proprietary capacity is not subject to the same legislative control as the type of property described in the preceding paragraph. This type of property may also be taken for public uses or purposes, but if it is taken by the Commonwealth, the municipality is entitled to be compensated for it. As to this type of property a municipality has the same right to be compensated as an individual has under art. 10 of the

---

[4] This article provides in part that "full power and authority are hereby given and granted to the said general court, from time to time, to make, ordain, and establish, all manner of wholesome and reasonable orders, laws, statutes, and ordinances, directions and instructions, . . . so as the same be not repugnant or contrary to this constitution, as they shall judge to be for the good and welfare of this Commonwealth, and for the government and ordering thereof, and of the subjects of the same . . . ."

Declaration of Rights of the Constitution. *Proprietors of Mount Hope Cemetery* v. *Boston*, 158 Mass. 509, 511, 519.

We now consider the question whether the liens here involved were acquired and held by the city in its governmental capacity as an agency of the State, or in its private or proprietary capacity. This question has arisen most frequently in cases where the ultimate issue was whether a municipality was subject to liability in tort for negligence in its discharge of a specific function or in its use of particular property. There are decisions which impose liability in connection with functions held to be of a private or proprietary nature such as the construction, maintenance and operation of water supply systems and sewer systems, and the operation of ferry boats.[5] There are other decisions holding municipalities immune from liability in connection with clearly governmental functions such as the erection, maintenance and operation of schools, playgrounds and hospitals, and the furnishing of fire protection or fire fighting services.[6] The administration of the general welfare law, G. L. c. 117, was a municipal function for many years prior to July 1, 1968. It was always held to be a governmental function with the result that a municipality was not liable for negligence in its performance. Section 1 of that law as amended through St. 1963, c. 726, § 1, required each municipality to "relieve and support all poor and indigent persons residing or found therein, whenever they stand in need thereof." Chapter 117 and c. 47 permitted municipalities to own and operate infirmaries, sometimes called city or town farms, at which to keep and care for persons entitled to such assistance. In a series of decisions it was held that the operation of such infirmaries was a governmental function, even though some small income may have been derived therefrom, and that the municipalities were

---

[5] *Lyons* v. *Lowell*, 239 Mass. 310. *Sloper* v. *Quincy*, 301 Mass. 20. *Harvard Furniture Co. Inc.* v. *Cambridge*, 320 Mass. 227. *Galluzzi* v. *Beverly*, 309 Mass. 135. *Green* v. *West Springfield*, 323 Mass. 335. *Davies* v. *Boston*, 190 Mass. 194.

[6] *Hill* v. *Boston*, 122 Mass. 344. *Hennessy* v. *Boston*, 265 Mass. 559. *Benton* v. *Trustees of Boston City Hosp.* 140 Mass. 13. *Tainter* v. *Worcester*, 123 Mass. 311.

not liable for personal injuries or property damage caused by such operation. *Orlando* v. *Brockton,* 295 Mass. 205, 209. *Chaffee* v. *Oxford,* 308 Mass. 520, 524–526. *Beakey* v. *Billerica,* 324 Mass. 290, 292–293. For other cases discussing this point, see *Neff* v. *Wellesley,* 148 Mass. 487, 493, *Curran* v. *Boston,* 151 Mass. 505, 508, and *Everett* v. *Canton,* 303 Mass. 166, 170–171.

Although we are not here concerned with the question of municipal tort liability, the decisions in cases in which that question was involved and which held that the municipal administration of the general welfare laws was a governmental function furnish some guidance. The liens in question were acquired by the city in its administration of the old age assistance law before July 1, 1968. That law was then only a part of a large body of statutes establishing a comprehensive municipally administered welfare program for furnishing aid and assistance to various segments of the inhabitants of the Commonwealth. The total program included aid to veterans under c. 115, aid to poor and indigent persons generally under c. 117, aid to families with dependent children under c. 118, aid to the aged under c. 118A, and aid to disabled persons under c. 118D. All parts of this comprehensive aid program were of uniform application throughout the Commonwealth. The old age assistance part of the program was geared to the nationwide Social Security laws under which the Federal government contributed to its expense as did the municipalities and the Commonwealth. See *Worcester* v. *Quinn,* 304 Mass. 276, 280, and 42 U. S. C. §§ 301–306 inclusive (Supp. IV, 1964). Statute 1967, c. 658, transferred the administration of all parts of the welfare program except aid to veterans under c. 115 to the Commonwealth; and it relieved municipalities from financial responsibility for the functions thus transferred.

We hold that the old age assistance program as administered by municipalities prior to July 1, 1968, was a purely governmental function and that all property acquired or held by them in the discharge of that function was held in

their governmental, and not in their private or proprietary, capacity.  As such, that property, including the liens in question, was subject to legislative control.  That right of control included the right to abolish the liens without compensation to the municipalities if it was done for the accomplishment of a public purpose.

We hold further that the purpose for which the liens were abolished was a public purpose within the scope of the constitutional powers of the Legislature.  "The Legislature has a wide discretion under the Constitution to determine the extent to which public burdens shall be borne directly by the Commonwealth or imposed upon the several cities and towns, and, if so imposed, the manner in which these burdens shall be distributed among the cities and towns, so long, at least, as such burdens are imposed without unreasonable discrimination."  *Attorney Gen.* v. *Board of Pub. Welfare of Northampton,* 313 Mass. 675, 679–680.  It was constitutionally permissible for the Legislature to determine that the transfer of responsibility for administration of the old age assistance and other welfare laws from municipalities to the Commonwealth would be facilitated by the abolition of the liens in question.  The statute which abolished the liens was just one part of a broad enactment designed to serve a genuine public purpose in pursuance of the power granted to the Legislature to make all manner of wholesome and reasonable laws as it shall judge to be for the good and welfare of the Commonwealth.  As such, that statute is not unconstitutional merely because, through its operation, some benefit may result to some persons whose property may be freed of the liens.  *Horrigan* v. *Mayor of Pittsfield,* 298 Mass. 492, 497–498.  *Paddock* v. *Brookline,* 347 Mass. 230, *supra,* which involved a special act enacted for the sole benefit of a named person and served no public purpose, does not apply.

This opinion is limited to liens on which no judicial enforcement proceedings had been started prior to July 1, 1968.

A final decree is to be entered declaring:  (a) that the liens acquired by the city of Cambridge under G. L. c. 118A,

§ 4, which were in effect before July 1, 1968, and on which it had not started judicial enforcement proceedings prior to that date, have been abolished; (b) that the city is not entitled to payment from the Commonwealth for the liens which have been abolished; and (c) that the treasurer of the city is required to give releases of the liens which have been abolished.

*So ordered.*