NANCY KIENZLER vs. DALKON SHIELD CLAIMANTS TRUST.

Suffolk. October 14, 1997. - November 6, 1997.

Present: WILKINS, C.J., ABRAMS, LYNCH, GREANEY, MARSHALL, & IRELAND, JJ.

*Limitations, Statute of. Statute,* Special law. *Constitutional Law,* Special law. Legislation favoring individual.

General Laws c. 260, § 2E, added by St. 1995, c. 38, § 200, to enlarge the statute of limitations applicable to claims for personal injuries brought against the Dalkon Shield Claimants Trust, did not violate the "standing laws" provision of art. 10 of the Massachusetts Declaration of Rights, where the statute had a legitimate public purpose, viz., the protection of Massachusetts women claiming injuries from the Dalkon Shield, that predominates over any detriment to the trust. [90-92]

CERTIFICATION of a question of law to the Supreme Judicial Court by the United States District Court for the District of Massachusetts.

*Dino S. Sangiamo,* of Maryland (*Nancy Kelly Roux & Paul F. Strain,* of Maryland, with him) for the defendant.

*Michael E. Mone* for the plaintiff.

GREANEY, J. Pursuant to Supreme Judicial Court Rule 1:03, 382 Mass. 700 (1981), a judge of the United States District Court for the District of Massachusetts has certified to us the following question:

"Is Mass. Gen. L. ch. 260, § 2E, the 'Dalkon Shield Statute,' valid under the 'Standing Laws' provision of Article 10 of the Declaration of Rights of the Massachusetts Constitution?"

We answer the question: "Yes."

The plaintiff was prescribed the Dalkon Shield intrauterine device, and it was inserted in November, 1971. The Dalkon Shield was removed from the plaintiff in June, 1974, during an emergency admission to Wesson Womens' Hospital. Removal of the Dalkon Shield was precipitated by her doctor's suspicion

that the plaintiff was experiencing an ectopic pregnancy. The pregnancy, which began while the Dalkon Shield was in place, was subsequently confirmed. As a result of this condition, the plaintiff underwent laparoscopic surgery shortly after the removal of the Dalkon Shield. The defendant, the Dalkon Shield Claimants Trust (Trust), contends, and the plaintiff does not dispute, that at the time the Dalkon Shield was removed in 1974, the plaintiff had reason to believe that at least some of the medical complaints she was experiencing were caused by the Dalkon Shield.

A.H. Robins Company, Inc., the manufacturer of the Dalkon Shield, filed for bankruptcy under Chapter 11 of the United States Bankruptcy Law in 1985. A plan of reorganization (plan) was consummated in late 1989, which established the Trust against which all Dalkon Shield claims were to be filed. The plan also provided that all persons with Dalkon Shield personal injury claims were required to complete a specific claim resolution process and be certified by the United States District Court for the Eastern District of Virginia prior to commencing or resuming litigation. The plaintiff filed a timely claim against the Trust, completed the Trust's claim review process in accordance with the plan requirements, and was properly certified to proceed with litigation on March 16, 1995. Having failed to reach a satisfactory resolution of her claim with the Trust, the plaintiff filed her complaint in the United States District Court for the District of Massachusetts on March 11, 1996.

The plaintiff does not dispute the Trust's contention that her lawsuit would be barred under G. L. c. 260, § 2A, the three-year statute of limitations generally applicable in Massachusetts to the claims made in her complaint. The plaintiff contends that her claims are timely under the provisions of the "Dalkon Shield Intrauterine Device Statute of Limitations," G. L. c. 260, § 2E, which was added by St. 1995, c. 38, § 200, to enlarge the statute of limitations specifically for claims against the Trust related to the Dalkon Shield. The statute is retroactive and reads as follows:

> "Notwithstanding the provisions of [G. L. c. 260, § 2A], every cause of action for personal injury or death caused by the effects of the Dalkon Shield intrauterine device, so called, shall be brought against the Dalkon Shield Claimants Trust not later than one year from the

date of the certification by the United States District Court for the Eastern District of Virginia of the right to proceed to litigation or arbitration, or six months from the effective date of this section, whichever is later. This section shall apply regardless of when any such action or claim shall have accrued or been filed, and regardless of whether it may have lapsed or otherwise be barred by time under the law of the commonwealth."

The Trust contends that G. L. c. 260, § 2E, is invalid because it violates the "standing laws" provision of art. 10 of the Declaration of Rights of the Massachusetts Constitution,[1] which prohibits the enactment of special legislation[2] that "single[s] out any person for special privileges or advantages at the expense of the rights of another," *Sciuto* v. *Lawrence,* 389 Mass. 939, 944 (1983). This contention must be examined under standards which place a heavy burden on the Trust. "In asking us to strike down [G. L. c. 260, § 2E], the [Trust] run[s] squarely into the settled rule that a reviewing court must grant all rational presumptions in favor of the constitutionality of a legislative enactment. See *Paddock* v. *Brookline,* 347 Mass. 230, 232 (1964); *Druzik* v. *Board of Health of Haverhill,* 324 Mass. 129, 138-139 (1949). The sole issue is whether the statute falls within the legislative power to enact, not whether it comports with a court's idea of wise or efficient legislation. See *Zeller* v. *Cantu,* 395 Mass. 76, 85 (1985); *Klein* v. *Catalano,* 386 Mass. 701, 710 n.11 (1982); *Opinion of the Justices,* 368 Mass. 880, 886 n.1 (1975). The party challenging the statute's constitutionality must demonstrate beyond a reasonable doubt, see *Klein* v. *Catalano, supra* at 706-707, that there are no 'conceivable grounds' which could support its validity. See *Zeller* v. *Canto, supra* at 84; *Commonwealth* v. *Franklin Fruit Co.,* 388 Mass. 228, 235 (1983)." *Boston* v. *Keene Corp.,* 406 Mass. 301, 305 (1989).

[1]This provision, contained in the first sentence of art. 10, reads as follows: "Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws." We have interpreted "standing laws" to mean enacted legislation of general application. See *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.,* 366 Mass. 734, 742 (1975).

[2]We have defined "special legislation" to mean "legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them." *Bessie M. Burke Memorial Hosp., supra* at 740.

The Trust argues that the conclusions reached in *Holden* v. *James*, 11 Mass. 396 (1814), and *Paddock* v. *Brookline, supra*, govern here. In these opinions, statutes which allowed single named individuals to maintain suits that otherwise would have been barred by a general statute were held to violate art. 10.[3] The Trust maintains that G. L. c. 260, § 2E, is similar to the statutes found invalid in *Holden* and *Paddock* because it extends the statute of limitations for a relatively small and identifiable group of people.[4]

The number of people benefited by a special statute is a factor to be considered in assessing the strength of an art. 10 challenge, but it is not the dispositive factor. It is also relevant whether the benefit conferred is "accompanied by corresponding injury to another person who can be definitely pointed to . . . ." *Commissioner of Pub. Health* v. *Bessie M. Burke Memorial Hosp.*, 366 Mass. 734, 743 (1975). We have upheld statutes which benefited single named entities because the statutes did no specific injury to any other person or entity. See *Boston Gas Co.* v. *Department of Pub. Utils.*, 387 Mass. 531, 538 (1982); *Bessie M. Burke Memorial Hosp.*, *supra* at 744. On the other hand, we have suggested that a proposed statute which would have benefited a group of females might violate art. 10 because it adversely affected the equal protection rights of similarly situated men. *Opinion of the Justices*, 373 Mass. 883, 885 (1977). Notwithstanding these considerations, a statute which favors one person or group at the expense of another is not necessarily to be condemned as violating art. 10 because much, if not all, legislation has this effect. The critical inquiry is whether the challenged statute can be said to have some legitimate public

---

[3]The statute in the *Holden* case removed the defense of various statutes of limitations so the plaintiff could maintain an action against the personal representatives or heirs and devisees of an estate. *Holden* v. *James*, 11 Mass. 396, 401 (1814). The statute in the *Paddock* case removed the defense of lack of notice so the plaintiff could maintain a case against the town of Brookline for a fall on a sidewalk. *Paddock* v. *Brookline*, 347 Mass. 230, 231 (1964).

[4]As of July 1, 1995, when G. L. c. 260, § 2E, became effective, there were in Massachusetts fifty-three women, and twenty-four husbands with derivative claims, who had completed the Trust's review process and were either certified for litigation or eligible to be certified. Since the deadline for filing claims against the Trust under the plan was June 30, 1994, and all plaintiffs were required to complete the claim resolution process prior to filing litigation against the Trust, these appear to be the only plaintiffs affected by G. L. c. 260, § 2E.

purpose that predominates over the benefit it otherwise confers on private parties and over any injury to another party. As we have pointed out with respect to art. 10: "the Legislature may go so far as to confer an outright bounty on selected individuals 'if some public purpose is promoted, [that is] if the statute is "for the good and welfare" of the Commonwealth . . . as to which the Legislature's judgment will weigh heavily' " (citation omitted). *Boston* v. *Keene Corp., supra* at 307, quoting *Bessie M. Burke Memorial Hosp., supra* at 744. Viewed in this light, the primary vice in the *Holden* and *Paddock* cases was the fact that they served no discernible public purpose and operated only to aggrandize the personal interests of a single party. See *Paddock, supra* at 240 ("We conclude that there is no basis for a legislative determination that the public good will be served by relieving this plaintiff from the general statutory requirement of giving notice").

General Laws c. 260, § 2E, does not violate art. 10 because any detriment to the Trust is subordinate to a "legitimate public good" derived from the statute.[5] *Gray* v. *Salem*, 271 Mass. 495, 498 (1930). In enacting the statute, the Legislature may have reasoned that the limitations period set forth in G. L. c. 260, § 2A, was unfair to women injured by the Dalkon Shield. The Legislature may have considered the delays imposed by the A.H. Robins bankruptcy proceedings and what it perceived to be questionable practices engaged in by Robins which may have misled women about the safety of its intrauterine device and their rights. The Legislature also appears to have had information that there were substantial unexpended assets in the Trust to satisfy any obligations it may have had to women who had not yet been afforded a fair opportunity to litigate their claims. The Legislature may have been influenced by the fact that other States have granted relief to similarly situated women by expanding their governing statutes of limitations to permit late claims against the Trust, and the Legislature may have given weight to the policy reasons that motivated the other

---

[5]There may also be due process concerns in connection with a statute challenged under art. 10. The Trust does not expressly raise such concerns here, and it would not prevail if any were argued. General Laws c. 260, § 2E, does not deprive the Trust of a fundamental or vested right or subject it to any new liability. The statute merely removes a procedural bar to the plaintiff's legal remedies. See *Boston* v. *Keene Corp.*, 406 Mass. 301, 312-313 (1989).

State Legislatures to adopt those statutes.[6] At the core of G. L. c. 260, § 2E, is an effort to protect the interests of Massachusetts women claiming injuries from the Dalkon Shield by placing them in parity with injured women in other States. In *Danforth* v. *Groton Water Co.*, 178 Mass. 472 (1901), the court upheld a special statute reviving an eminent domain action for damages against an attack that the Legislature cannot remove a bar or limitation which has already become complete. In the *Danforth* opinion, Chief Justice Holmes observed that the Legislature may "call a liability into being where there was none before, if the circumstances were such as to appeal with some strength to the prevailing views of justice, and if the obstacle in the way of the creation seemed small." *Id.* at 477. While *Danforth* was not an art. 10 case, we think these comments have pertinence here. Some of the assumptions apparently made by the Legislature could be debatable, and the Trust undoubtedly would say that the assumptions are wrong. But this is not the dispositive point. The dispositive point is that G. L. c. 260, § 2E, has a legitimate public purpose, and as a result, does not offend art. 10.[7]

---

[6] At least four States, California (Cal. Code Civ. P. § 340.7 [West 1994 & 1997 Supp.]); Kansas (Kan. Stat. Ann. § 60-524 [1995]); New York (N.Y. Public Health Law § 2404 [McKinney 1993 & 1997 Supp.]); and Ohio (Ohio Rev. Code Ann. § 2305.101 [Baldwin 1995]) have enacted statutes similar to G. L. c. 260, § 2E. The rationale identified by the California Legislature was the "unique and extraordinary circumstances surrounding the Dalkon Shield and the bankruptcy of A.H. Robins Co." including "[e]xtraordinary delays in the resolution of these claims [which] have denied many of these women the customary right to file timely lawsuits." Cal. Stats. 1994, c. 107, § 2. The California Legislature also stated that this bill "place[s] California women who have claims against the Virginia-based trust on a more equal footing with claimants from other states [with] more liberal statutes of limitations . . . ." *Id.*

[7] Based on what has been said, we reject the Trust's argument, in reliance on *Boston* v. *Keene Corp.*, *supra*, that G. L. c. 260, § 2E, violates art. 10 because it provides benefits to private persons rather than to the government. A statute is not violative of art. 10 so long as it promotes some legitimate public purpose that is not completely "incident and collateral to the relief of a private citizen." *Id.* at 310, quoting *Gray* v. *Salem*, 271 Mass. 495, 498 (1930). The statute meets this standard. Indeed, although the statute at issue in *Keene* (which provided relief from statutes of limitations for asbestos-related claims) was limited to governmental entities, we recognized possible legislative authority to extend the statute to private plaintiffs by stating, "[t]he fact that St. 1986, c. 336, does not accord similar benefit to private plaintiffs does not undermine the legitimacy of this governmental interest. The Legislature could well have concluded that the asbestos problem was most acute in public buildings, and thus decided to address that aspect of the crisis first." *Id.* at 309.