**Bradley J. DONAHUE, Plaintiff,**

v.

**CITY OF BOSTON, et al., Defendants.**

**No. CIV.A. 00–10884–JLT.**

United States District Court,
D. Massachusetts.

June 4, 2003.

Janis M. Berry, Rubin and Rudman, LLP, Boston, for Boston Police Dept., Defendant.

Nadine M. Cohen, Lawyers Committe for Civil Rights Under Law of the Boston Bar Association, Boston, for Boston, City of, Paul Evans, Defendants.

Elizabeth J. Day, Department of Correction Legal Division, Boston, for Boston, City of, Defendant.

Edward J. DeAngelo, Attorney General's Office, Boston, for Paul Evans, James J. Hartnett, Jr., Defendants.

Conway T. Dodge, Jr., Rubin & Rudman, Boston, for James P. McDonagh, John Marra, Marc Chavanne, Boston Police Dept., Defendants.

Rory J. Fitzpatrick, Kirkpatrick & Lockhart, Boston, for Boston, City of, Paul Evans, Boston Police Dept., Defendants.

Irene C. Freidel, Kirkpatrick & Lockhart, Boston, for Boston, City of, Paul Evans, Boston Police Dept., Defendants.

Andrew C. Glass, Kirkpatrick & Lockhart, Boston, for Boston, City of, Paul Evans, Boston Police Dept., Defendants.

William V. Hoch Office of the Legal Advisor Staff Attorney, Boston Police Department, Boston, for Boston, City of, Paul Evans, Boston Police Dept., Defendants.

Michael C. McLaughlin, Boston, for Bradley J. Donahue, Plaintiff.

Brendan P. Mitchell, Rubin and Rudman, Boston, for Boston Police Dept., Defendant.

Ginny Sinkel Attorney General's Office, Boston, for Boston, City of, Paul Evans, James J. Hartnett, Jr., Defendants.

Toni G. Wolfman, Foley Hoag LLP, Boston, for James P. McDonagh, John Marra, Marc Chavanne, Defendants.

## MEMORANDUM

TAURO, District Judge.

Plaintiff Bradley Donahue ("Donahue") brought suit against the City of Boston, the Boston Police Department ("BPD"), and various public officials,[1] alleging that

1. Other named defendants are Paul F. Evans, Commissioner of the BPD; James J. Hartnett, Personnel Administrator of the Commonwealth of Massachusetts Executive Office for Administration and Finance, Human Resources Division; James P. McDonagh, Assistant Personnel Administrator of the Human Resources Division; Marc Charvanne, Di-

the hiring practices of the BPD, governed by the consent decree issued by this court in *Castro v. Beecher*[2] ("consent decree"), are discriminatory under the Fourteenth Amendment to the Constitution, 28 U.S.C. §§ 2201 and 2202, and 42 U.S.C. §§ 1981, 1983, 1985 and 1986. On December 13, 2001, this court allowed Defendants' summary judgment motion, finding that Plaintiff lacked standing to pursue his suit.[3]

On appeal, the First Circuit Court of Appeals affirmed that dismissal as to Donahue's claim for damages.[4] But, the Court of Appeals found that Donahue might have standing to pursue his claim for prospective relief. The basis for that determination was that Donahue had made a sufficient showing that, as a result of the consent decree, he was unable to compete on an equal footing in the BPD's hiring process.[5] The case was thus remanded to this court for a determination as to whether Donahue did in fact have standing to pursue his claim for prospective relief. Before the court now are Donahue's and Defendants' cross-motions for summary judgment.

## BACKGROUND

Since 1997, Donahue has been employed as a police officer for the Town of Yarmouth, Massachusetts.[6] Prior to his employment with the Town of Yarmouth, Donahue was employed by the University of Massachusetts Police.[7] Neither of these positions required Donahue to take a civil service examination.[8]

To become a police officer with the BPD, however, a candidate must pass a statewide civil service examination. That examination is administered by the Commonwealth of Massachusetts Human Resources Division ("HRD").[9] After it administers the exam, HRD compiles an "eligible list" of people who received a passing score on the examination, and who are therefore eligible for appointment to a civil service position.[10] HRD alternates minority and non-minority candidates on the eligible list pursuant to the consent decree ("alternation requirement").[11]

The candidates on the eligible list are divided into residents and non-residents of Boston.[12] Residents, regardless of score, are ranked higher than are equally situated non-residents, subject to the alternation requirement of the consent decree. Within the group of residents, some have a statutory preference and are ranked higher than those without a statutory preference. The statutory preferences are: (1) the child of a firefighter or police officer

rector of Test Administration of the Human Resources Division; and John Marra, General Counsel of the Human Resources Division.

**2.** 365 F.Supp. 655 (D.Mass.1973) (Wyzanksi, J.).

**3.** *See Donahue v. City of Boston*, 183 F.Supp.2d 202 (D.Mass.2001) (Tauro, J.).

**4.** *See Donahue v. City of Boston*, 304 F.3d 110, 116 (1st Cir.2002).

**5.** *See id.* at 119–20.

**6.** *See* Aff. of Irene C. Freidel in Supp. of Mot. to Dismiss and for Summ. J. on all Counts of

Second Am. Compl. ("Freidel Aff.") Ex. D ("Donahue Depo.") at 18.

**7.** *See* Donahue Depo. at 17.

**8.** *See* Aff. of Omar Hernández, Deputy General Counsel, Mass. Human Resources Div. ("Hernández Aff.") ¶¶ 3–4.

**9.** *See* Second Am. Compl. ¶ 12.

**10.** *See* Mass. gen. laws ch. 31 § 1.

**11.** *See* Second Am. Compl. ¶ 63; Aff. of Edward P. Callahan ("Callahan Aff.") ¶ 8.

**12.** *See* Callahan Aff. ¶ 9.

who was killed or sustained injuries that resulted in death; (2) disabled veterans; (3) veterans; and (4) widows, or widowed mothers of veterans who were killed in action or died from a service-connected disability incurred in wartime service.[13] Those candidates with a statutory preference are all ranked higher than are those without a statutory preference, subject to the alternation requirement of the consent decree.[14]

Plaintiff Donahue does not qualify for a statutory preference. He, therefore, is ranked according to his score on the civil service examination.[15]

In order to hire a new class of student officers, the BPD requisitions from HRD the exact number of positions it wishes to fill.[16] HRD then certifies a sufficient number of names from the eligible list.[17] Starting from the top of the eligible list, and moving down in strict rank order, HRD certifies twice the number of persons requested by the BPD, plus one (2n + 1), and thereby creates the "certification list."[18] The BPD must select candidates for appointment in order of their position on the certification list, starting with the highest-ranking person, unless it supplies a reason for bypassing someone.[19]

In addition to the above hiring procedures, the BPD can hire new officers in three other ways. It can appoint: (1) police cadets;[20] (2) former members of the BPD who retired because of disability and are seeking reinstatement;[21] and (3) former recruit officers from a previous class.[22] None of these alternative methods are available to Plaintiff Donahue, and he can thus only be appointed, if at all, from the general certification list.

Donahue's initial complaint challenged the procedures followed, and the appointments made, by the BPD as a result of both the April 1997 and May 1999 civil service exams.[23] He asked this court to issue an order appointing him as a student officer, retroactive to July 2, 1998, awarding him damages for his lost wages, overtime, and other benefits, enjoining Defendants from using race in making any future decisions involving him, and awarding him attorneys' fees.[24]

On December 13, 2001, this court allowed Defendants' motion for summary judgment, finding that Plaintiff lacked standing to pursue his claim.[25] In particular, this court held that Donahue lacked standing, because his test scores were so low that he would not have been hired, even in the absence of the consent decree. As a result of his April 1997 civil service exam score, Donahue was approximately number 1350 on the eligible list. Two

13. *See* Mass. Gen. Laws ch. 31 § 26.

14. *See* Callahan Aff. ¶¶ 10, 13.

15. *See* Callahan Aff. ¶ 12.

16. *See* Callahan Aff. ¶ 17.

17. *See* Mass Gen. Laws ch. 31 § 6; Callahan Aff. ¶ 19.

18. *See* Callahan Aff. ¶ 19. Additionally, special certification lists may be created of persons who qualify for a hiring preference based on their ability to speak certain languages. *See* Callahan Aff. ¶ 22.

19. *See* Mass. Gen. Laws ch. 31 § 27.

20. *See* Callahan Aff. ¶ 24.

21. *See* Mass. Gen. Laws ch. 32 § 8

22. *See* Mass. Regs. Code tit. 550, § 3.04(1)(e); Callahan Aff. ¶ 26.

23. *See* First Am. Compl.

24. *See* First Am. Compl. at 41–42.

25. *See Donahue v. City of Boston,* 183 F.Supp.2d 202 (D.Mass.2001).

certification lists were prepared from that eligible list, and the BPD hired 139 officers, 126 of whom qualified for a statutory preference. There were, therefore, only thirteen spots for those that could be hired pursuant to the consent decree. Prior to considering Donahue for such an appointment, the BPD would have had to consider, and reject, 586 other applicants with better scores.[26]

Similarly, Donahue's score on the May 1999 exam placed him at approximately number 326 on the eligible list. Only one certification list was created from the results of the May 1999 exam. There were only seven spots for those hired pursuant to the consent decree, and the BPD would have had to consider, and reject, 117 candidates for those 7 spots before it considered Donahue.[27] Typically, the BPD hires one person for every three persons listed on an eligible list.[28] This court, therefore, found that "[t]he undisputed facts demonstrate that Donahue's test scores and lack of statutory preference doomed his candidacy

to failure before the consent decree came into play. Because Donahue has no injury, he has no standing."[29]

On appeal, the First Circuit Court of Appeals agreed that Donahue lacked standing to pursue his claim for damages.[30] The Court of Appeals did not agree, however, that Donahue necessarily lacked standing to pursue his claim for prospective relief.[31] The First Circuit held that a plaintiff has standing to pursue a claim for prospective relief if that person has been denied an opportunity to compete on an equal footing. Because at least one minority candidate without a statutory preference or language skills was hired despite a lower score than Donahue's on the May 1999 exam, the Court found sufficient evidence that Donahue had not been able to compete on an equal footing.[32] The Court of Appeals found "inescapable" the conclusion that "Donahue would likely have been hired based on his May 1999 exam score if he were a minority applicant."[33]

26. Michael Want was the lowest-ranking, non-minority candidate appointed. Want's name appeared on page four of the eligible list at number 188. Donahue's name, on the other hand, appeared at number 1350, on page twenty-seven. Between Want's name and Donahue were 1172 names. Since the names alternate between minority and non-minority candidates, half the names on the eligible list are non-minorities. There were, therefore, 586 non-minority names between Want and Donahue on the eligible list, and the BPD would have had to consider 586 other non-minority candidates before Donahue for the thirteen available spots. *See id.* at 205–06.

27. The lowest-ranked, non-minority candidate appointed was a veteran whose name (Richard McNeil) appeared at number ninety-one on page two of the eligible list. Donahue's name appeared at number 326 on page seven of the eligible list. Between McNeil and Donahue were 117 non-minority candidates eligible to fill the seven available spots. *See id.* at 206.

28. *See* Callahan Aff. ¶ 57.

29. *See Donahue v. City of Boston,* 183 F.Supp.2d 202, 209 (D.Mass.2001).

30. *See Donahue v. City of Boston,* 304 F.3d 110, 116 (1st Cir.2002).

31. *See id.* at 121.

32. According to HRD records, one minority applicant hired to the BPD as a result of the May 1999 civil service examination scored a 95 on that exam, whereas Donahue scored a 96. One minority candidate hired as a result of that exam scored a 96 as well, while the remaining five minority candidates hired had scores higher than that of Donahue. *See* Second Aff. of Edward P. Callahan ("Callahan Aff. II") ¶ 17.

33. *Donahue v. City of Boston,* 304 F.3d 110, 120 (1st Cir.2002) (noting, however, that "this is not the same as evidence demonstrating that Donahue would have received an appointment under race-neutral criteria").

Well after this litigation began, Donahue sat for the civil service exam a third time. In April 2001, the Commonwealth administered another statewide civil service examination.[34] Donahue passed with a score of 100.[35] When he took the exam, however, Donahue had already reached age thirty-two.[36] He was, therefore, ineligible for hire to the BPD because of the passage of Mass. Gen. Laws ch. 31 § 58A (" § 58A"). Under § 58A, "no person shall be eligible to have his name certified for original appointment to the position of firefighter or police officer if such person has reached his thirty-second birthday on the date of his entrance examination." [37]

HRD prepared the initial eligible list of applicants to the BPD based on the results of the April 2001 exam on September 1, 2001.[38] Because of § 58A's enactment, Donahue's name did not appear on that list.[39] On September 14, 2001, HRD prepared the certification list and forwarded it to the BPD.[40] As his name did not appear on the eligible list, Donahue's name was also absent from the certification list, and once again Donahue was not hired by the BPD.[41] In light of the First Circuit's remand order, and Donahue's performance on the April 2001 exam, this court allowed Donahue to file a Second Amended Complaint and asked the parties to brief the court on § 58A's age limitation and its effect on Donahue's candidacy.[42]

## DISCUSSION

Both parties have filed motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." [43] When a trial court decides a motion for summary judgment, it "examines the entire record in the light most flattering to the nonmovant and indulges all reasonable inferences in that party's favor." [44]

█ A plaintiff has standing to pursue a claim for prospective relief if he can establish that he has been exposed to unequal treatment.[45] "However, because the relief sought is forward looking, the plaintiff must also be able to show that he is able and ready to apply for the benefit and that the challenged discriminatory policy prevents him from doing so." [46] For Donahue

---

34. *See* Second Am. Compl. ¶ 116.

35. *See* Second Am. Compl. ¶ 117.

36. *See* Memo. of the City of Boston Defs. in Supp. of Mot. for Summ. J. and/or Mot. to Dismiss the Second Am. Compl. ("Defs.' Memo.") at 8 (stating that Donahue turned thirty-two on March 26, 2001).

37. Mass. Gen. Laws ch. 31 § 58A.

38. *See* Hernández Aff. ¶ 7.

39. *See* Hernández Aff. ¶ 7.

40. *See* Hernández Aff. ¶ 8; Callahan Aff. II Ex. A.

41. *See* Hernández Aff. ¶ 8; Callahan Aff. II Ex. A.

42. Although the parties make a number of arguments in their briefs, this court believes that § 58A's effect on Donahue's candidacy is the only remaining issue in the case.

43. Fed. R. Civ. Proc. 56(c).

44. *Cadle Co. v. Hayes,* 116 F.3d 957, 959 (1st Cir.1997) (internal citations and quotations omitted).

45. *See Donahue v. City of Boston,* 304 F.3d 110, 119 (1st Cir.2002) (citing *Wooden v. Bd. of Regents of the Univ. Sys. of Ga.,* 247 F.3d 1262, 1279 (11th Cir.2001)).

46. *Donahue,* 304 F.3d at 119 (internal citations and quotations omitted).

to proceed with the instant suit, therefore, he must show that he was unable to compete on an equal footing with other applicants to the BPD because of his race. One minority applicant was hired even though that minority applicant's score was lower than Donahue's on the May 1999 exam. The First Circuit has already held, therefore, that Donahue was not able to compete on an equal footing.[47] And so, Donahue has satisfied the first prong of the standing inquiry for a claim seeking prospective relief.

The standing inquiry does not end there, however. Donahue must also establish that he is able and ready to apply for a position with the BPD, and that it is the consent decree that prevents him from doing so. Defendants argue that Donahue cannot satisfy this prong of the standing inquiry because § 58A prevents any individual, regardless of their race, from receiving an original appointment to the BPD based on an exam taken after that individual's thirty-second birthday. Defendants allege that, even assuming Donahue's score of 100 on the April 2001 exam is so high as to guarantee that, all other issues aside, he would have been hired by the BPD, because Donahue was thirty-two when he took that exam he cannot be considered. Donahue is, according to De-

fendants, not able and ready to become a police officer with the BPD, because of § 58A's age limitation. Defendants, therefore, conclude that, as § 58A is a valid and constitutionally sound statute, Donahue has no standing to pursue his claim for prospective relief and Defendants' motion for summary judgment should be allowed. For his part, Donahue counters that § 58A (1) has been repealed; (2) does not apply to him because he is not seeking an "original appointment;" and (3) is unconstitutional.[48]

## A. § 58A Remains in Effect.

■ The Legislature of the Commonwealth of Massachusetts passed § 58A on August 10, 2000. Section 58A states:

> Notwithstanding the provisions of any general or special law to the contrary, in any city, town or district that accepts this section, no person shall be eligible to have his name certified for original appointment to the position of firefighter or police officer if such person has reached his thirty-second birthday on the date of his entrance examination.

Each city, town or district was thus able to determine for itself whether it wished to exclude applicants age thirty-two and over from the certification list from which police

---

47. *See id.* at 119–20.

48. Donahue's assertion that the First Circuit "unequivocally resolved" that, but for his race, he would have been hired based on his score on either the April 1997 or May 1999 exams is without merit. It is true that, because a minority applicant with a lower score on the May 1999 exam was hired while Donahue was not, the First Circuit found inescapable the conclusion that "Donahue would likely have been hired based on his May 1999 exam score *if he were a minority applicant.*" *Donahue v. City of Boston*, 304 F.3d 110, 120 (1st Cir.2002) (emphasis added). But, the First Circuit went on to say, in the very next sentence, "that this is not the same as evidence demonstrating that Donahue would

have received an appointment under race-neutral criteria ...." *Id.* Nor could the First Circuit have concluded that, in the absence of the consent decree, Donahue would have been hired by the BPD. Donahue's score on the May 1999 exam placed him at approximately number 326 on the eligible list. All but seven spots were filled by candidates with statutory preferences or from the cadet program. For those seven spots, the BPD would have had to consider 117 candidates before it considered Donahue. Since the BPD typically hires one person for every three persons listed on an eligible list, Donahue would not have been hired even under race neutral criteria.

officers and firefighters are hired. The City of Boston elected to adopt § 58A, and notified the Commonwealth of its decision to do so on January 23, 2001.[49]

Donahue argues that, despite the City of Boston's adoption of § 58A, the section does not apply to the April 2001 examination because the City Council passed a home rule petition exempting "any Boston resident who took and passed the April 2001 civil service examination for appointment to the position of police officer with the Boston Police Department ...."[50] But, the home rule petition was never presented to, nor enacted by, the Legislature, because Boston's Mayor Tom Menino never approved it.[51] There being no evidence to the contrary, this court is satisfied that § 58A remains in force in the City of Boston and Donahue cannot avail himself of any exemption from its operation.

■ Nor does § 58A run afoul of the Constitution of the Commonwealth of Massachusetts' prohibition against passing special laws that would circumvent standing laws of general application.[52] Article 10 provides that "[e]ach individual of the society has a right to be protected by it in the enjoyment of his life, liberty and property, according to standing laws,"[53] and thereby "prohibits the enactment of special legislation that singles out any person for special privileges or advantages at the expense of the rights of another."[54] The courts have defined "special legislation" as "legislation addressed to a particular situation, that does not establish a rule of future conduct with any substantial degree of generality, and may provide ad hoc benefits of some kind for an individual or a number of them."[55]

■ In reviewing a legislative enactment, the court must grant all rational presumptions in favor of its constitutionality.[56] The question is not whether this court deems the legislation wise, but rather whether the statute falls within the Legislature's power to enact.[57] In fact, "[t]he party challenging the statute's constitutionality must demonstrate beyond a reasonable doubt that there are no con-

---

**49.** *See* Freidel Aff. Ex. A; Callahan Aff. II ¶ 7.

**50.** *See* Freidel Aff. Ex. C.

**51.** *See* Freidel Aff. ¶ 4; Freidel Aff. Ex. C. On the other hand, Mayor Menino did approve, and present to the Legislature, a home rule petition exempting from § 58A firefighters "who took and passed the April 29, 2000 examination for appointment to the position of firefighter with the Boston Fire Department ...." *See* Freidel Aff. ¶ 3; Freidel Aff. Ex. B. There is some indication in the record that the Mayor passed the home rule petition as to firefighters because those applicants had been afforded no notice of the age limitation prior to taking the April 2000 firefighter's exam. *See* Def.'s Memo. at 10; Freidel Aff. Ex. B. This was not the case with the exam for police officers, administered in April 2001, as the City of Boston made every effort to notify candidates when they signed up for the exam that certain towns had adopted the

§ 58A age limitation. *See* Callahan Aff. IV ¶ 5; Callahan Aff. IV Ex. A.

**52.** *See* Second Am. Compl. ¶ 125.

**53.** MASS. CONST. Pt. 1, Art. 10. The courts have interpreted "standing laws" to mean "enacted legislation of general application." *Kienzler v. Dalkon Shield Claimants Trust*, 426 Mass. 87, 686 N.E.2d 447, 450 n. 1 (1997).

**54.** *Kienzler*, 686 N.E.2d at 449 (internal citations and quotations omitted).

**55.** *Kienzler*, 686 N.E.2d at 450 (quoting *Comm'r of Pub. Health v. Bessie M. Burke Mem'l Hosp.*, 366 Mass. 734, 323 N.E.2d 309, 313 (1975)).

**56.** *See Kienzler*, 686 N.E.2d at 449–50 (citing *Paddock v. Brookline*, 347 Mass. 230, 197 N.E.2d 321, 323 (1964)).

**57.** *See Kienzler*, 686 N.E.2d at 450.

ceivable grounds which could support its validity." [58] Donahue cannot meet his heavy burden of establishing that § 58A violates the Constitution of the Commonwealth of Massachusetts. Quite simply, § 58A is not "special legislation" because it *does* "establish a rule of future conduct with [a] substantial degree of generality" and is not aimed at benefitting a specific group. Section 58A applies equally to all applicants to the Boston Police and Fire Departments who took the civil service exam after § 58A's enactment and after they received notice of the § 58A age limitation. Section 58A, furthermore, serves a public purpose by ensuring that new officers are able to make a long-term commitment to the BPD and are physically capable of performing their duties, and by benefitting the pension system.[59]

■ Donahue has similarly failed to establish that § 58A and the home rule petition to exempt candidates who took the April 2001 police officer exam violate Chapter 4 § 4B of the Massachusetts General Laws (" § 4B") and Amended Article 2 to the Massachusetts Constitution. Donahue is correct that both § 4B and Amended Article 2 define the authority of cities, towns and municipalities to govern themselves. Donahue appears to argue that the City Council exceeded its authority in its effort to modify § 58A by the home rule petitions passed on behalf of candidates seeking appointment as police officers or firefighters.[60] This evinces, however, a misunderstanding of the City

Council's actions with respect to the two home rule petitions. The City Council asked the *Legislature* to amend § 58A to exempt, first, those firefighter candidates who had taken the April 2000 civil service exam prior to § 58A's enactment and, second, those police officer candidates who had taken the April 2001 civil service exam after § 58A's enactment. The Legislature voted to amend § 58A to exempt the firefighter candidates who had taken the April 2000 exam after that home rule petition was approved by Mayor Menino. On the other hand, Mayor Menino did not approve the home rule petition with respect to the police officer candidates who had taken the April 2001 exam and thus the Legislature was never presented with, and never enacted, any such amendment to § 58A. The City Council, therefore, took no action to rescind or amend § 58A at all, let alone any action that violated either § 4B or Amended Article 2. Because § 58A's age limitation remains in its original form as to police officer candidates who took the April 2001 exam, this court now turns to Donahue's second argument—that § 58A does not apply to him.

**B.** *Donahue Seeks an Original Appointment.*

■ Donahue's second attack is not on § 58A itself but on its applicability to his appointment to the BPD. Donahue asserts that § 58A's age limitation does not apply to him because he is not seeking an "original appointment." [61] As support for this

---

**58.** *Id.* (internal citations and quotations omitted).

**59.** *See Kienzler,* 686 N.E.2d at 450 (noting that the primary vice of legislation struck down as inconsistent with Article 10 "was the fact that [it] served no discernable public purpose and operated only to aggrandize the personal interests of a single party"); Callahan Aff. IV ¶ 3.

**60.** Donahue also argues that the City of Boston was without authority to adopt § 58A because § 58A violates the equal protection guarantees of the federal Constitution. This argument is considered, and rejected, below.

**61.** By its terms, § 58A acts as a bar only to those candidates age thirty-two and over who are seeking an original appointment to the BPD. MASS. GEN. LAWS ch. 31 § 58A.

argument, Donahue points to the fact that he is a police officer with the Town of Yarmouth, and that prior to that he was a police officer with the University of Massachusetts.

Mass. Gen. Laws ch. 31 § 6 states:

Each appointment to a civil service position shall be made by an original appointment pursuant to the provisions of this section or by a promotional appointment pursuant to the provisions of section seven, except as otherwise provided by this chapter or other law. Each such original appointment in the official service shall be made after certification from an eligible list established as the result of a competitive examination . . . .

It thus appears that there are only five ways in which Donahue could have been appointed to the BPD: (1) through an original appointment; (2) through a promotional appointment; (3) through the police cadet program; (4) if he was a former member of the BPD who retired because of disability and was seeking reinstatement; and (5) if he was a former recruit officer from a previous class. There is no dispute as to the latter three options with regard to Donahue—he was neither a cadet nor a former member of the BPD nor a former recruit officer from a previous class. Donahue, therefore, could have been appointed to the BPD only through an original or a promotional appointment.

Donahue argues that his experience as a police officer in the Town of Yarmouth and with the University of Massachusetts takes him out of the category of an original appointment. In contrast, Defendants argue that, because Donahue was not appointed to those other positions through a process requiring a competitive examination, Donahue's appointment to the BPD is indeed an original appointment. Defendants' argument is essentially this: because neither position required a competitive exam, neither position qualifies as a civil service position. Since Donahue was never employed in a civil service position, his appointment to the BPD would be an original appointment, and thus subject to § 58A's age limitation.

There can be no doubt but that were Donahue appointed to the BPD, it would be an original appointment. Neither his position with the Town of Yarmouth police department nor his position with the University of Massachusetts can be considered a civil service position, because neither was pursuant to a competitive exam. "Civil service appointment" is statutorily defined to include either "an original appointment or a promotional appointment made pursuant to the provisions of the civil service law and rules." [62] The courts have held that "[a]n underpinning of the civil service structure is that original and promotional appointments will be made from a list of persons declared eligible on the basis of competitive examination." [63] It is undisputed that neither the position with the Town of Yarmouth nor the position with the University of Massachusetts required Donahue to take a competitive examination as a condition of being hired. Donahue

---

62. MASS. GEN. LAWS ch. 31 § 1.

63. *City of Fall River v. Teamsters Union, Local 526,* 27 Mass.App.Ct. 649, 541 N.E.2d 1015, 1017 (1989); *see also Aquino v. Civil Serv. Comm'n,* 34 Mass.App.Ct. 538, 613 N.E.2d 131, 132 (1993) ("Original and promotional appointments under the civil service system are made from a list of persons who have met the requirements for eligibility."); *City of*

*Somerville v. Somerville Mun. Employees Ass'n,* 20 Mass.App.Ct. 594, 481 N.E.2d 1176, 1180 (1985) (finding that original appointment required certification from an eligible list established as a result of a competitive examination). Promotional appointments in the BPD also require a competitive promotional exam. *See* MASS. GEN. LAWS ch. 31 § 59.

has thus not been employed in a civil service position.

It is equally clear from the statute that promotional appointments require that the candidate already be employed in a civil service position. A police officer can achieve a promotional appointment pursuant to Mass. Gen. Laws ch. 31 § 59. That section states that the examination for a promotional appointment is open only to a permanent employee, defined as "a person who is employed in a civil service position (1) following an original appointment ...; or (2) a promotional appointment ...."[64] To be eligible for a promotional appointment, therefore, Donahue would have had to have been in a civil service position when he took the exam to join the BPD.[65] Since his prior employment as a police officer had never required Donahue to take a competitive exam, that prior employment does not qualify as civil service employment, and Donahue was eligible to join the BPD only via an original appointment. That being so, § 58A's age limitation prevents Donahue's original appointment unless his third argument, that § 58A is unconstitutional, requires this court to find otherwise.

### C. *Section 58A is Constitutional.*

 Donahue's third and final attack on § 58A is that it violates an individual's constitutional right to equal protection.[66] There is no question that § 58A classifies applicants to the BPD on the basis of age, and treats those under the age of thirty-two on the day of the exam differently than those age thirty-two and older. But it is also well-settled law that "States may discriminate on the basis of age without offending the Fourteenth Amendment if the age classification in question is rationally related to a legitimate state interest."[67] An age classification is rationally related "unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that [the court] can only conclude that the legislature's actions were irrational."[68] It is irrelevant that reliance on age as a proxy for other characteristics, like fitness, may be misplaced or inaccurate.[69] Finally, because an age classification is presumptively rational, "the burden of proving that the facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker" rests with the party challenging its constitutionality.[70]

Donahue has not met his burden of convincing this court that § 58A is not rationally related to a legitimate state interest. In his sworn affidavit, Edward P. Calla-

**64.** MASS. GEN. LAWS ch. 31 § 1.

**65.** This court assumes, purely for the sake of argument, that the civil service exam Donahue took is the same exam as a candidate for a promotional appointment would take. Although this seems unlikely in reality, it does not matter because Donahue was not eligible for a promotional appointment in the first place.

**66.** U.S. Const. amend. XIV, § 1.

**67.** *Kimel v. Florida Bd. of Regents*, 528 U.S. 62, 83, 120 S.Ct. 631, 145 L.Ed.2d 522 (2000).

**68.** *Vance v. Bradley*, 440 U.S. 93, 97, 99 S.Ct. 939, 59 L.Ed.2d 171 (1979); *Kimel*, 528 U.S. at 84, 120 S.Ct. 631.

**69.** *See Kimel*, 528 U.S. at 84, 120 S.Ct. 631; *Massachusetts Bd. of Ret. v. Murgia*, 427 U.S. 307, 316, 96 S.Ct. 2562, 49 L.Ed.2d 520 (1976).

**70.** *See Kimel*, 528 U.S. at 84, 120 S.Ct. 631 (internal citations and quotations omitted).

han, Director of Human Resources for the BPD, states that the BPD, in supporting the City Council's decision to adopt § 58A, believed that the age limitation ensured that new police officers were making a long-term commitment to the BPD.[71] The age limitation further served to ensure that police officers with the BPD were physically capable of performing their duties.[72] Finally, the age limitation would benefit the BPD's pension system.[73] It does not matter whether these were the reasons on which the City Council actually relied in deciding to adopt § 58A. It matters only whether these reasons evince a legitimate public purpose that is rationally related to § 58A's age limitation. This court believes that § 58A is rationally related to a number of legitimate public purposes, including encouraging a long-term commitment to the BPD, ensuring the physical fitness of its officers, and relieving strain on the BPD's pension system. In short, § 58A is rationally related to a legitimate public purpose, and thus survives constitutional scrutiny.

▮ Donahue's argument that § 58A should meet the requirements of strict scrutiny analysis because it is in fact a statute that has the effect of classifying individuals based on their race has no mer-

it. Donahue argues that because minorities do not need to score as high as non-minorities on the test, minorities who scored as well or better than Donahue on exams prior to April 2001 all have jobs with the BPD already.[74] Those individuals are thus not affected by § 58A's age limitation. Section 58A, according to Donahue, thus has a disparate impact on non-minorities competing for a position with the BPD.[75]

Strict scrutiny is not required, however, because this facially neutral statute affects minorities and non-minorities age thirty-two and over in exactly the same way. Any individual, regardless of his race, seeking an original appointment to the BPD is precluded from doing so if he is thirty-two or older on the day he presents himself for the civil service exam. Even if this court were to accept Donahue's largely speculative assertion that § 58A has a disparate impact on non-minorities, there is no evidence that § 58A's age classification is a pretext for racial discrimination or that the Legislature had a discriminatory purpose in enacting § 58A.[76] There is thus no need to apply strict scrutiny analysis to § 58A, and since there exists a rational basis for the age classification, § 58A is constitutionally sound.[77]

---

**71.** *See* Callahan Aff. IV ¶ 3.

**72.** *See* Callahan Aff. IV ¶ 3.

**73.** *See* Callahan Aff. IV ¶ 3.

**74.** *See* Memo. in Supp. of Pl.'s Cross–Mot. for Summ. J. and Opp'n to Defs.' Mot. to Dismiss Second Am. Compl. and/or for Summ. J. ("Pl.'s Memo.") at 18.

**75.** *See* Pl.'s Memo. at 18.

**76.** *See Personnel Administrator of Massachusetts v. Feeney,* 442 U.S. 256, 272, 99 S.Ct. 2282, 60 L.Ed.2d 870 (1979) (stating that although disparate impact is a starting point for the analysis, it is purposeful discrimination that offends the Constitution); *Village of*

*Arlington Heights v. Metro. Hous. Dev. Corp.,* 429 U.S. 252, 264–65, 97 S.Ct. 555, 50 L.Ed.2d 450 (1977) (stating that "[p]roof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause").

**77.** Similar age classification statutes have been upheld in other jurisdictions. *See. e.g., Stewart v. Smith,* 673 F.2d 485 (D.C.Cir.1982) (noting in a footnote that the Bureau of Prisons' age limit of thirty-four for new hires was not an irrational means to maintaining a vigorous law enforcement workforce); *Thomas v. United States Postal Inspection Serv.,* 647 F.2d 1035 (10th Cir.1981) (finding that age maximum of thirty-four was rationally related to the continuous need for young, strong and

## CONCLUSION

There is no evidence that § 58A (1) is no longer in effect; (2) does not apply to him; or (3) is unconstitutional. That being so, § 58A prevents Donahue from being appointed to the BPD because he reached age thirty-two before taking the April 2001 civil service exam. Donahue is thus not able and ready to apply for appointment to the BPD, not because of the consent decree, but because he is too old. In other words, Donahue has not established that he has the requisite standing to pursue his claim for prospective relief, and his suit must be dismissed. Defendants' motion for summary judgment is ALLOWED.

AN ORDER WILL ISSUE.

experienced postal inspectors); *Arritt v. Grisell,* 567 F.2d 1267 (4th Cir.1977) (finding that age maximum of thirty-five established for police officer candidates was rationally related to a legitimate purpose); *Ridaught v. Div. of Florida Highway Patrol,* 314 So.2d 140 (Fla.1975) (upholding requirement that all applicants be less than age thirty-five as reasonably relevant to the State's purpose of ensuring sufficiently agile, alert and dexterous highway patrol officers); *Figueroa v. Bronstein,* 38 N.Y.2d 533, 381 N.Y.S.2d 470, 344 N.E.2d 402 (1976) (finding age maximum of thirty-two for appointment as a correction officer constitutional); *Sobieralski v. City of S. Bend,* 479 N.E.2d 98 (Ind.Ct.App.1985) (upholding age maximum of thirty-six for new police officers as rationally related to a legitimate state interest); *Peterson v. City of New York,* 1998 WL 247530 (S.D.N.Y. May 14, 1998) (finding that case law upholding age limit of twenty-nine for new police officers has precedential value even though statute establishing age limit had been amended).