Agnes, Peter W., J.
1. Introduction
The plaintiffs, Debra A. Chambers and Kevin A. Chambers (collectively, “the Chambers”), have resided at 171 Sunset Drive, Charlton, Massachusetts since they purchased their home in 1993. The property abuts Glen Echo Lake (hereafter, “the lake”) in an area of the lake known as the “Narrows.” The plaintiffs do not own or have a property interest in the lake.
*510 Defendant Glen Echo Improvement Association, Inc. is a non-profit corporation organized under Chapter 180 of the General Laws, and is comprised of persons who own property on the lake and who pay dues to the association. Defendant Town of Charlton is a municipal Corporation that owns the lake and the land underneath in fee. Defendant Secretary of Environmental Affairs (hereafter, “Secretary”) is a cabinet officer in the Executive Department of state government and with the official oversight of the Division of Law Enforcement that has police powers over activity on lakes. See G.L.c. 90B, §11.
2.Relief requested
The Chambers filed a complaint seeking to prevent the enforcement and, ultimately, the invalidation of a state statute, St. 2006, c. 91, entitled “An Act Increasing the Speed Limit for Boating Within the Narrows in Glen Echo Lake in the Town of Charlton.” This law was signed into law by the governor on May 31, 2006 and became effective immediately. The plaintiffs’ Motion for Preliminary Injunction was denied. This case is now before the court on Defendants’ Motion to Dismiss pursuant to Mass.R.Civ.P. 12(b)(6).
3.Preliminary statement of facts
The essential facts are not in dispute. Over the years, persons who own property on the lake and their guests have enjoyed boating, swimming, and fishing on the lake. In the Narrows, the area where the Chambers’ property is located, the lake is approximately 220 feet wide. One of the recreational activities the plaintiffs have traditionally enjoyed is swimming from the shore line on their property out to areas within and around the narrows.
In April 2004 a group of Charlton residents petitioned the Charlton Board of Selectmen asking that the selectmen request a change in state law to permit motorboats to travel at a speed of not more than 35 mph through the narrows within a clearly marked channel. The item was placed on the warrant for a 2004 town meeting, and was approved by the voters. As a result, a Home Rule petition was filed and enacted into law by both branches of the Legislature and signed into law by the Governor.
Prior to the adoption of St. 2006, c. 91, boating within the Narrows was governed by regulations adopted by the Division of Law Enforcement within the Secretariat of Environmental Affairs. For example 323 CMR §2.07(3) provides, in part, that motorboats shall not be operated within 150 feet of a shoreline being used as a swimming area, and shall not operate at more than headway speed[1] when within 300 feet of a shoreline used for swimming or within 150 feet of a swimmer. St. 2006, c. 91 provides that,
Notwithstanding any general or special laws or regulation to the contrary, the speed limit for motor boating through the Narrows of Glen Echo Lake in the Town of Charlton shall be 35 miles per hour within a clearly marked channel. The channel shall have a minimum width of 120 feet. Swimming shall be prohibited within the channel.
The effect of this law is to limit the portion of the Narrows in which persons may swim to approximately 50 feet from each shoreline. The plaintiffs have submitted affidavits in which they recount observation of boating and swimming activity on the lake since the adoption of St. 2006, c. 91 that they characterize dangerous due to the higher speed of boats traveling through the Narrows and boats and other vessels that travel through the Narrows at 35 mph or greater but do not remain within the channel.
4.Standard of Review
On a motion to dismiss, the Court takes as true the allegations of the complaint and such inferences favorable to plaintiff that may be drawn therefrom. Jacome v. Commonwealth, 56 Mass.App.Ct. 486, 487 (2002), citing Eyal v. The Helen Broadcasting Corp., 411 Mass. 426, 429 (1991); Spinner v. Nutt, 417 Mass. 549, 550 (1994). A defendant is entitled to dismissal if the court is certain that the complaining party is not entitled to relief under any statement of facts that could be proven in support of the claim. Harvard Law School Coalition for Civil Rights v. President and Fellows of Harvard College, 413 Mass. 66, 68 (1992) (citations omitted).
5.Legal Analysis
Plaintiffs assert that the St. 2006, c. 91 violates the Takings Clause of the Fifth Amendment, the Equal Protection Clause of the Fourteenth Amendment, and Article 10 of the Declaration of Rights of the Massachusetts Constitution.
Plaintiffs’ first argument is that the effect of St. 2006, c. 91 amounts to an unconstitutional taking in violation of their due process rights guaranteed by the Fifth Amendment of the U.S. Constitution because it deprives them of a property right they had, until then, previously enjoyed. In addition, plaintiffs assert that the value of their property has substantially diminished due to the recent limitation on their ability to swim in the lake abutting their property. A valid property interest is a prerequisite for bringing a claim under the Takings Clause of the Fifth Amendment to the U.S. Constitution. Plaintiffs do not have any private property interest in the lake. The effective loss of the ability to swim in the lake abutting their property more than 50 feet from their shoreline does not rise to the level of property right protected by the Takings Clause. Any impact on the recreational, aesthetic or property interests of the plaintiffs caused by the enactment of St. 2006, c. 91 is de minimis and does not comprise the basis for a claim of regulatory taking. See Nolan v. California Coastal Commission, 483 U.S. 825, 834 (1983). See also Leonard v. Brimfield, 423 Mass. 152, 155 (1996).
Plaintiffs’ second argument, that St. 2006, c. 91 violates the Equal Protection Clause of the Fourteenth *511 Amendment, also falls. The statute in question does not affect any fundamental right of the plaintiff and is not based on a suspect classification such as race or gender. See Whitacre v. Department of Public Health, 446 Mass. 350, 366 (2006). The statute thus enjoys a strong presumption of validity. See Commonwealth v. Henry’s Drywall Inc., 366 Mass. 539, 541 (1974). A statute such as St. 2006, c. 91 will withstand attack unless it is shown to be arbitrary or capricious, or wholly lacking a rational basis. ‘The party challenging the statute’s constitutionality must demonstrate beyond a reasonable doubt that there are no conceivable grounds which could support its validity.” Kienzler v. Dalkon Shield Claimants Trust, 426 Mass. 87, 89 (1997) (citations and quotations omitted). See also Boston v. Keene Corp., 406 Mass. 301, 305 (1989) (Court’s role is to inquire only “whether the statute falls within the legislative power to enact, not whether it comports with a court’s idea of wise legislation”). Because it is certainly rational for the Legislature to decide that boat traffic should be preferred over swimming in the Narrows, the statute will not be struck down on Fourteenth Amendment grounds.
Finally, plaintiffs contend that the Special Legislation is invalid because it violates the standing laws provision of Article 10 of the Declaration of Rights to the Massachusetts Constitution (“Article 10”), which prohibits the enactment of special legislation that singles out a person for special privileges or advantages at the expense of rights of another. Sciuto v. Lawrence, 389 Mass. 939, 941 (1983). This third argument fails because the effect of St. 2006, c. 91 does not operate to benefit an individual or group at the expense of Chambers in the manner that Article 10 is intended to prevent.
The first sentence of Article 10 reads as follows, “Each individual of the society has a right to be protected by it in the enjoyment of his life, liberty, and property, according to standing laws.” The courts have interpreted “standing laws” to mean an act of legislation of general application. Commissioner of Pub. Health v. Bessie M. Burke Memorial Hosp., 366 Mass. 734, 742 (1975). The courts have defined “special legislation” to mean legislation addressed to a particular situation that does not establish a rule of future conduct with any substantial degree of generality, and may provide ad hoc benefits of some kind for one individual or a number of individuals. Id. at 740.
In this case, the standing laws are the regulations that establish the statewide 150-foot safety zone between boaters and the shoreline or swimmers. The special legislation is Chapter 91 of the Acts of 2006, which confers the right on individuals to travel at 35 miles per hour where it would otherwise be prohibited.
Plaintiffs allege that the special legislation has singled out a small group of individuals to enjoy the benefit of boating faster through the Narrows at the expense of the right of the Chambers to swim more than 50 feet from their property line. The small group benefited, plaintiffs argue, consists of the members of Glen Echo Improvement Association due to the fact that there is no public boat ramp on the lake. The number of people benefited by a special statute is a factor to be considered in assessing the strength of an Article 10 challenge, but it is not the dispositive factor. Kienzler, supra at 91. Notwithstanding this consideration, a statute that favors one person or group at the expense of another is not necessarily to be condemned as violating Article 10 because much, if not all, legislation has this effect. The critical inquiry is whether the challenged statute can be said to have some legitimate public purpose that predominates over the benefit it otherwise confers on private parties and over any injury to another party. Id.
Any harm suffered by the plaintiffs as a result of the adoption of the new law does not qualify as special or peculiar, but rather limits the rights of all who use the lake. See Town of Burlington v. Town of Bedford, 417 Mass. 161, 166 (1994). Plaintiffs are free to boat at 35 miles per hour through the Narrows, and no individual (including the plaintiffs) is allowed to swim 50 from the shore in that part of the lake. The fact that plaintiffs consider themselves swimmers and not boaters does not equate to having their rights abridged under Article 10.
Because all of plaintiffs’ arguments fail as a matter of law on the facts presented, plaintiffs fail to state a claim on which relief can be granted.
ORDER
For the above reasons, the Defendants’ Motion to Dismiss for failure to state a claim for relief under Mass.R.Civ.P. 12(b)(6) is GRANTED.

Under 232 CMR§2.02, “headway speed” is defined as “the minimum speed at which a vessel may be operated and maintain steerage way, but not to exceed six miles per hour.”